## CHARLES WEIL v. ROSENDO MARTINEZ ET AL.

Decided November 10, 1909.

**1.—Vendor and Vendee—Contract of Sale—Construction—Pleading—Cancellation.**

Plaintiffs entered into a contract with defendant to convey to him a large body of land containing several different tracts at a certain price per acre; in some of the tracts plaintiffs owned only undivided interests; the contract recited that all of the lands were situated in one solid body, but that if it should be discovered they were not so situated, then the defendant might at his option refuse to take any or all of said tracts and that plaintiffs should proceed to have the unpartitioned tracts duly partitioned; the boundaries of the entire body of land were established by a survey, plaintiffs taking their proportionate parts of the undivided surveys and including them within the boundaries so as to make a solid body. Afterwards plaintiffs executed to defendant a deed to the entire body of land as surveyed, and defendant paid the purchase money for all the land except that included in the unpartitioned tracts, as to which he executed on the same day a contract acknowledging a vendor's lien to secure the payment of the purchase money therefor, said money to be paid whenever proper deeds or decrees of partition were procured by and between the plaintiffs and the other owners of said tracts; said contract required the plaintiffs to procure a partition of said tracts as soon as practicable and to secure such deeds or decrees of partition as would meet with the approval of defendant; it further provided that the vendee, defendant, should remain in possession of the lands described in the deed without rent for the use of any portion thereof until said deeds or decrees of partition were obtained. Thereafter plaintiffs filed a suit for partition against the other owners of the undivided tracts; defendant was a party to said suit because of his possessory right; plaintiffs sought in said partition to have the lands embraced in their deed to the defendant awarded to them and to him, but in this they failed, and there was awarded to them a tract disconnected from the other lands described in their said deeds; defendant thereupon refused to accept or pay for the share of land awarded to him and to the plaintiffs in the partition decree, on the ground that it was disconnected from the other tracts described in his deed; he also refused to reconvey to plaintiffs their interest in the unpartitioned tracts conveyed to him by their deed, or to release to plaintiffs the title vested in him by the decree of partition to the land awarded to plaintiffs and to him by said decree. In a suit by the vendors against the vendee to cancel their deed to him in so far as it conveyed to him their interests in the undivided tracts, and for rents, pleadings of plaintiffs considered, and held not subject to general demurrer on the ground that it appeared therefrom that the original contract of sale containing the option provision was abrogated by the subsequent deed and vendor's lien contract, and that plaintiffs were absolutely bound thereby to have such partition made as was satisfactory to defendant, and until this was done defendant could hold the land embraced in the deed without paying either the purchase money or rent therefor. Under said pleadings the original contract of sale, the subsequent deed and vendor's lien contract should all be construed together.

**2.—Same—Pleading—Description of Land.**

Pleading considered in a suit to cancel a deed to land, and held not. subject

to special exception on the ground that it did not sufficiently describe the land sought to be recovered.

**3.—Appeal—Finding of Fact—Brief—Statement.**

When a finding of fact by a trial court is attacked by an assignment of error on the ground that it is without evidence to support it, the appellant must show or allege in the statement of the evidence under such assignment that the evidence therein set forth is all the evidence bearing on the fact; otherwise the assignment will be overruled.

**4.—Contract of Sale—Possession of Land—Rent.**

Where, by the terms of a contract for the sale of certain lands, the vendee is allowed the option to reject portions of the land if the title thereto did not prove satisfactory to him, and the vendee took possession and occupied all of said lands pending the perfecting of the title, the vendee would be liable for the rental value of such lands as he declined to take only from the date of his final rejection of the same.

**5.—Same—Improvements in Good Faith—Pleading.**

Where, under a contract of sale of land, the vendee takes possession and makes permanent and valuable improvements thereon in good faith pending the perfecting of the title, upon failure of the vendors to make title as stipulated in the contract, the vendee would be entitled to recover the value of the improvements so made, not to exceed, however, the value alleged in his pleading.

**6.—Same—Specific Performance—Belated Tender.**

In an action by a vendor to recover from his vendee the possession of certain land which the vendee had refused to pay for, an offer by the vendee to comply with his contract and a tender of the money in court comes too late when made six years after the suit was filed and after the land had very much enhanced in value.

Appeal from the District Court of Nueces County. Tried below before Hon. W. B. Hopkins.

*G. R. Scott & Pope* and *W. L. Dawson,* for appellant.—As the second amended original petition only alleges "that appellees have complied with all the terms and conditions of their several agreements with the appellant in regard thereto," and shows by the exhibits attached to said petition that they have not complied with said several agreements, the general demurrer should have been sustained. Revised Statutes, arts. 1183, 1191; Freiberg v. Magale, 70 Texas, 116.

The second amended original petition showing that the rights of parties to the suit depended upon contract, it became necessary for them to allege in positive and uncontradictory terms that they had on their part fully complied with all of their undertakings as set forth in the contract. Nevins v. Thomas, 80 Texas, 596; Gober v. Hart, 36 Texas, 141; Brown v. Binz, 50 S. W., 483.

Having executed and delivered their general warranty deed for the lands, appellees could only recover said lands because of failure on the part of appellant to pay the consideration therefor according to the contract of parties; and any effort on their part to otherwise recover would be a breach of their warranty and they would be estopped thereby.

*James B. Wells* and *F. W. Seabury,* for appellees.—When a peti-

tion contains one count well pleaded, or shows right to any portion of the relief generally or specifically prayed, a general demurrer to the petition must be overruled. Staples v. Llano County, 9 Texas Civ. App., 205; Cheeves v. Anders, 87 Texas, 294.

A cause of action arising from a contract is not subject to general demurrer or special exception on the score of failure of plaintiff to comply literally with such contract, if the petition taken as a whole shows either full compliance or substantial compliance therewith by such plaintiff, or circumstances dispensing with full compliance. Linch v. Paris L. & G. Elevator Co., 80 Texas, 37; Bradford v. Whitcomb, 11 Texas Civ., pp. 223 and 224; Clark on Contracts, p. 628.

Clause 5 of the original contract of August 1, 1899, giving appellant an election of remedies in case it should be discovered that the lands covered by said contract are not situated in a solid body, said remedies being either to refuse all the lands, or to take them all, or to take any portion of them, as he may elect, if the parties are satisfied, was in full force and effect during the year 1902, and was not abrogated by any subsequent agreement of the parties. Page on Contracts, secs. 1339 and 1340; Clark on Contracts, pp. 610-613; 9 Cyc., pp. 595 and 596; Uhlig v. Barnum, 43 Neb., 584, 61 N. W., 749; Millsaps v. Merchants', etc., Bank, 71 Miss., 361, 13 So., 903; Rhoades v. Chesapeake & O. Ry. Co., 49 W. Va., 494, 55 L. R. A., 170; Renard v. Sampson, 12 N. Y., 561; San Antonio Street Ry. Co. v. Adams, 87 Texas, 131; Galveston, H. & S. A. Ry. Co. v. Johnson, 74 Texas, 263.

Recovery by appellees in this suit does not constitute a breach of warranty on their part, nor are they estopped from maintaining this suit or from recovering any of their demands herein by reason of the covenant of general warranty contained in their deed to appellant. Dunlap v. Wright, 11 Texas, 597; Burgess v. Millican, 50 Texas, 397; Cooper v. Singleton, 19 Texas, 260; Chase v. Swayne, 88 Texas, 224; Moore v. Vogel, 22 Texas Civ. App., 235.

The fact that some of the tracts were unpartitioned being known to the parties, the law of cotenancy and partition entered into and formed part of the original contract and subsequent deed and obligation, and the parties made their said agreements subject thereto and charged with knowledge that their agreements or conveyance could not prejudice their cotenants and that either of the partitions could legally result in their acquiring their share of the land elsewhere than agreed to between them, and in such manner as to require the exercise of the right of election allowed appellant in the contract. Smith v. Elliott, 39 Texas, 211; International B. & L. Assn. v. Hardy, 86 Texas, 612; McKey v. Welch, 22 Texas, 396; Furrh v. Winston, 66 Texas, 523; Freeman on Cotenancy and Partition, sec. 205.

The decree of partition of the Agua Nueva de Arriba tract was a final adjudication of title and undivided ownership as between the parties to that suit, and a final severance of their unity of posses-, sion and divestiture of their claims to and undivided ownership in all other portions of the tract and vestiture of title in them to the

shares set apart to them respectively. Such decree can not be attacked collaterally in this suit by appellant, who was a party thereto. Rev. Stats. 1895, arts. 3610, 3625; Black on Judgments, secs. 660, 662; Freeman on Cotenancy and Partition, secs. 530, 531.

Charles Weil, having been properly made a party to said partition suit and being a proper party thereto, can not in this suit collaterally attack the decree of partition therein rendered, and particularly not on the ground that the decree was not to his satisfaction. Williams v. Haynes, 77 Texas, 284-285; Mikeska v. Blum, 63 Texas, 46-48; Irion v. Bexar Co., 26 Texas Civ. App., 527; Black on Judgments, secs. 290, 291 and 272.

When appellant refused to accept share 41 and pay the purchase price, he exercised an option granted under the original contract of sale and elected his remedy under that contract, appellees agreeing thereto, and thereupon appellees were entitled to the possession of said land, discharged of the contracts between the parties. Page on Contracts, sec. 1360; Clark on Contracts, sec. 263, p. 621, and following.

If appellant's refusal to accept and pay for share 41 was not authorized by the contract between the parties, then it was a breach and repudiation of the contract, such as authorized appellees also to disaffirm and rescind same, and to reenter upon their said lands · or recover same by suit. Dunlap v. Wright, 11 Texas, 597; Burgess v. Millican, 50 Texas, 397.

Appellant neither pleaded nor proved any equities in himself that entitled him to recover the value of improvements made by him on share 41 of the Agua Nueva de Arriba tract, and appellees were entitled to recover said land without compensating him for any such improvements. Allen v. Mitchell, 13 Texas, 373; Moore v. Giesecke, 76 Texas, 550-551; Estes v. Browning, 11 Texas, 243-244; Crouch v. Johnson, 7 Texas Civ. App., 439-440; Pell v. Chandos, 27 S. W., 48.

The judgment and decree herein rendered was the only proper judgment that could be rendered under the pleadings and proof, and the appellant was not entitled by the judgment of the court to be allowed to pay the purchase price of said share 41, and thereby avoid appellees' recovery of the land. Fullerton v. Doyle, 18 Texas, 4; Estes v. Browning, 11 Texas, 243, 244, 246-248; Edwards v. Atkinson, 14 Texas, 377; Stitzle v. Evans, 74 Texas, 596; Thompson v. Robinson, 93 Texas, 170; Pell v. Chandos, 27 S. W., 48; Walsh v. Ford, 27 Texas Civ. App., 573; Evans v. Bentley, 9 Texas Civ. App., 112; Kennedy v. Embry, 72 Texas, 387.

REESE, ASSOCIATE JUSTICE.—Rosendo Martinez and others instituted this suit against Charles Weil for the recovery of certain lands embraced in a deed from plaintiffs to defendant and a contract contemporaneous therewith expressly retaining a lien on said lands until the purchase money was paid, and cancellation of said deed as to the land embraced in the petition, for rents, damages, etc. There was an alternative prayer for judgment for the purchase money in

the event plaintiffs were held not entitled to recover the land. The suit was instituted in 1902.

The material averments of the petition are that on August 1, 1899, plaintiffs, together with their ancestor, Gertrudis Martinez, since dead, whose rights they hold, entered into a written contract by the terms of which they contracted to sell to defendant a large body of land consisting of several different tracts, for the price of $1 per acre. Among the tracts embraced in the contract, all of which are set out in the petition to which the contract is attached as an exhibit, are 4715 acres out of the "Palitos Blancos" grant, 5412 acres out of the "Agua Nueva de Arriba" grant and 4087 acres out of "La Noria de Santo Domingo" grant. We will hereafter speak of these grants as "Palitos," "Domingo" and "Arriba." There were the usual provisions about furnishing deeds and proofs of title on the part of plaintiffs, and examination and approval of same by defendant before payment of purchase money. This contract has the following:

"The parties further declaring their understanding that all of said lands were situated in one solid body, and if it should be discovered that they are not so situated, then defendant might at his option refuse to take any of said lands, or might take them all, or any portion of them, as he might elect, if the parties to said contract should be satisfied; and that any of said tracts of land that were not partitioned might be considered by defendant as imperfect title, and that the other parties thereto should proceed to have them duly partitioned, and that they should also have said 30,370 acres of land surveyed in one solid body and incorporate the field notes of the survey in their deed."

That in pursuance of this contract plaintiffs presented to defendant abstracts and proofs of title which were examined by him, and certain defects suggested, which were corrected by plaintiffs; and on or about October 1, 1899, defendant approved said titles in all respects except only that the lands in the "Palitos," "Arriba" and "Domingo" grants were unpartitioned, and defendant declined to take or pay for said unpartitioned lands until they should be partitioned, but defendant agreed to accept from said vendors their deed to all of the land embraced in a survey thereof to be made by a surveyor of his selection, including portions equal to their undivided interests in said unpartitioned lands, and to pay for the same, except the unpartitioned tract, at once, upon delivery of the deed, and to pay for the remainder when partitioned, the deferred payments to be secured in some manner to be later agreed upon. That thereupon said lands were surveyed by a surveyor selected by defendant and a map thereof submitted to and approved by defendant; and on December 4, 1899, plaintiffs delivered to defendant a deed embracing by field notes all of said lands, including 4256.64 acres of the Palitos, 5904 acres of the Arriba and 3523.1 acres out of the Domingo grants, total of 31,596.14 acres, varying in some respects from the quantity mentioned in the original contract, but accepted by defendant as a compliance therewith. The purchase price of all said lands, except those in the three surveys mentioned,

was paid in cash, and with regard to the latter, on the same day the parties executed a contract, reciting the conveyance aforesaid, and also that the land in the Palitos grant had been arranged and paid for; defendant acknowledged a vendor's lien upon the land in the Arriba and Domingo grants to secure the payment of the purchase money thereof, to wit: $1 per acre. The contract is made a part of the petition as exhibit C, from which it appears that the defendant agreed to pay for the land conveyed to him in the Arriba and Domingo grants respectively "whenever proper deeds or decrees of partition may be procured by and between said grantors and the other owners of the whole of said two tracts of land, whereby the parts and portions conveyed to me in said deed of conveyance are deeded or decreed to said grantors or to defendant, said deed of conveyance being referred to for a more particular description of all lands above mentioned." This contract has the following further provision: "It being understood by and between all the parties to said deed that the grantors therein will, as soon as practicable, have said two last named tracts partitioned between all of the parties who may be interested therein whether by equitable or legal title, and will secure such partition deeds or decrees of partition or both between all of said parties who may be interested in said two tracts or either of them as will meet with the approval of myself; and until said deeds or decrees of partition are had, I am to remain in full, complete and independent and sole possession of all of said lands described in said deed, without rent or toll of any kind for the use thereof or the use of any portion thereof, and that as soon as said deed or decrees of partition are had by the said grantors I will, on their demand, pay in the city of Corpus Christi the balance of said purchase money; provided they, at the same time, present, offer and deliver to me, in the said city of Corpus Christi, a full, complete release from this instrument and its effects."

It is further alleged that in pursuance of said contract plaintiffs, joining with other cotenants of said lands, defendant being also a party plaintiff, in 1900 instituted a suit for partition of the lands in the Arriba grant, and on March 20, 1902, secured a final decree of partition in which there was set apart to defendant, as holding the possessory title, and to these plaintiffs, as holding the legal title, 5904 acres out of the Arriba grant, denominated "share 41," the metes and bounds of which are fully set out; and thereupon, on or about April 5, 1902, plaintiffs informed defendant of said decree and demanded payment of the purchase price of said 5904 acres, offering to execute proper release of the vendor's lien. Defendant declined to make payment unless plaintiffs would have the decree of partition recorded, present evidence of the payment of all back taxes, and deliver to him a full release of the vendor's lien, all of which conditions were complied with by plaintiffs on or about April 20, 1902, as to the Arriba land, when defendant declined to pay until he could examine the original map of partition and satisfy himself that the field notes of share 41 corresponded therewith. Plaintiffs then secured such original map and sent the same to defendant, whereupon on or about May 10, 1902, defendant demanded that

share 41 be surveyed by a surveyor of his selection, which was there-
upon done at plaintiffs' expense; and about June 10, 1902, again
demanded of defendant payment for said land, and frequently dur-
ing the months of June, July and August, 1902, repeated said de-
mand, but defendant continuously evaded and put such payment off
until finally, on or about September 8, 1902, plaintiffs tendered to
defendant in Corpus Christi their certain deed and release in due
form, conveying said share 41 and releasing the vendor's lien, de-
manding payment by defendant of the purchase price of $5904, but
that defendant thereafter, on October 31, 1902, refused to accept
such release and deed or pay said money, giving as his sole reason
for such refusal that all of the lands sold should be in a solid
body and that this release and conveyance failed to comply with
such requirement; and that thereafter on various occasions has re-
peated such refusal on the ground that there exists between share
41 and the lands in the Santo Domingo de Abajo grant (embraced
in the original deed) a strip of land that is not included in any
conveyance made or tendered to defendant and not in fact the prop-
erty of plaintiffs. It is averred that such refusal on the part of
defendant constituted an election by him, under the terms of the
original contract of sale, relating to such option and hereinabove
set out in full, not to take the lands embraced in the Arriba grant
as share 41, which election plaintiffs declared at the time of such
refusal and now declare they are satisfied with, and that by virtue
of such election said land is excluded from said contract and plain-
tiffs are entitled to a reconveyance thereof, which has been demanded
by them, which has been refused, which is a cloud upon their title.

But in the event that facts set out should be held not to show
such election, plaintiffs aver that they have had partitioned and set
apart to defendant in severalty said 5904 acres in the Arriba grant,
as share 41; that said decree is final and binding upon all the par-
ties; that they had tendered to defendant a deed and release and
are entitled to recover the sum of $5904 with legal interest from
April 20, 1902, with foreclosure of their lien.

There are certain allegations with regard to the land in the Do-
mingo grant which need not be shown. It is sufficient to say with
regard to this land, 3545 acres, that by amended answer filed in
1908 defendant expressed himself as satisfied with the partition of
this tract, and tendered and deposited in court the purchase price
thereof, and that matter was settled by decree of court to the satis-
faction of the parties by paying over to plaintiffs the money so
deposited, less the amount advanced by defendant to plaintiffs to
pay costs of the partition proceedings and interest, according to the
terms of a contract entered into by the parties with regard thereto.

The petition concludes with a prayer for recovery of the posses-
sion of the land, cancellation of the deed, removal of cloud, and for
rents and damages; and in the event that plaintiffs are not entitled
to recover the land, for judgment for the purchase money and fore-
closure of lien, and for equitable and general relief. All of the
written documents referred to are attached to the petition as ex-
hibits.

To this petition defendant interposed a general demurrer, numerous special exceptions, general denial, and not guilty, and a lengthy special answer on the facts. Such of said special exceptions as are material will be shown in the discussion of the various assignments of error based upon the action of the court in overruling the same.

Defendant states the facts stated by plaintiffs with regard to the execution of the original contract of sale, the deed of conveyance and the contract with regard to the unpartitioned lands and reservation of the vendor's lien as pleaded by plaintiffs, and with regard to these lands it is alleged that it was understood between the parties that in keeping with the terms of said contract, plaintiffs were to have said unpartitioned lands partitioned and set apart to defendant or themselves in a solid body, in compliance with the description in their deed, and such partition should be had with vigor and had to the satisfaction of defendant at the earliest date; that it was further agreed that all of the premises conveyed were under a good and substantial fence especially on the outer lines, and that if not on such outer lines plaintiffs would place it there.

As showing defendant's contention, arising upon construction of the contract aforesaid, it was alleged that the purchase money of the unpartitioned land was not to be paid until the lands were partitioned and set apart to defendant according to the description in the deed, and with the approval of defendant, and until this was done defendant was to have exclusive possession of the land described in the deed without rent or toll of any kind. It was averred that the land in the Arriba grant had not been partitioned in accordance with the terms of the agreement so as to form a solid body with the other lands conveyed, nor so as to give to defendant the lands out of that grant included in the field notes of land conveyed by the deed, but that according to said partition the land described in the deed is not set apart to defendant, but a different tract of different shape, and leaving a strip of land separating said tract from the other lands conveyed to defendant, so that the entire tract would not be in a solid body.

It is alleged that plaintiffs have wholly failed to comply with the provisions of their said contracts as aforesaid to have set aside to defendant the lands out of the Arriba grant as agreed so that he might pay the balance of the purchase money which, it is alleged, he has been at all times ready, able and willing to do as soon as plaintiffs have complied with their contracts; but in the event the court should find that plaintiffs have complied with their part of said agreements by doing the things undertaken to be done by them, then the defendant tenders in court such amount as the court may find due plaintiffs under the terms and provisions of said contracts and agreements.

It was alleged that the vendor's lien agreement executed in connection with the deed constituted a new, separate and binding contract upon the parties. That if defendant was a party to the partition suit of the Arriba lands the same was done by plaintiffs without his knowledge or consent, and for the convenience of plaintiffs, and that defendant knew absolutely nothing about said suit or any

action taken therein until long after its final disposition, but left the entire control and management thereof to plaintiffs, and defendant is in no way bound by said decree in this proceeding.

Defendant alleged that after the execution of the deed, relying upon the agreement of plaintiffs with regard to the partition, he entered upon that part of the Arriba grant conveyed to him, and in good faith has made valuable and permanent improvements, specifying the same, of the value of $1000. This answer, being the first amended answer, was filed July 15, 1908.

The court overruled defendant's general demurrer and special exceptions, and, trying the case without a jury, rendered judgment for plaintiffs for the 5904 acres of land of the Arriba grant and for rent thereof from April 1, 1902, to April, 1908, at ten cents per acre per annum, amounting to $3789.20, and cancelling the deed as to this tract, and also cancelling the vendor's lien as to the land in the Santo Domingo tract. The decree directed the payment to plaintiffs out of the sum of $3545.20 paid into the court by defendant as the price of the land out of the Domingo tract, the sum of $1822.70, the balance of said sum, $1722.50, to be paid to defendant, being the amount found to be due him for the $1000 advanced by him to plaintiffs to pay costs of the partition proceedings, with interest thereon according to the terms of the written contract concerning that matter. All of the costs were adjudged against defendant except that portion thereof arising out of plaintiffs' demand for the balance of the purchase price of the Santo Domingo land, which are adjudged against plaintiffs. From the judgment defendant presents this appeal.

The following findings of fact of the trial court are approved and adopted by us, embracing all of the court's findings, none of the objections thereto in the appellant's brief being sustained:

"1. That the plaintiffs in this case now own and are entitled to all the rights and cause of action of one Gertrudis G. Martinez (also known as Gertrudis Garcia de Martinez), hereinafter mentioned, who was their ancestress, who is now dead, and of whom they are the sole heirs at law.

"2. That on August 1, 1899, these plaintiffs and said Gertrudis G. Martinez entered into a written contract with the defendant, Charles Weil, bearing that date, whereby they contracted to sell to the said Charles Weil 30,370 acres of land, more or less, situated in Starr County, Texas, embracing, among other tracts and parcels of land as recited in said contract, 5412 acres of land out of an eight league tract of land in said county, called Agua Nueva de Arriba, and 4087 acres out of a five league tract of land in the same county, called La Noria de Santo Domingo, for a consideration of $1 per acre, to be paid on the delivery of possession of, and a good and sufficient deed to, said premises, and a title thereto satisfactory in all respects to defendant.

"The parties therein further declaring their understanding that 'all of said 30,370 acres, intended to be conveyed by this contract, are situated in one solid body, and if it is discovered that they are not so situated, then the party of the second part may, at his op-

tion, refuse to take any of the lands, or may take all of them, or any portion thereof, as he may elect, if the parties thereto are satisfied;' and that any of said tracts that are not partitioned may be considered by said Weil, defendant herein, as imperfect title, and that the other parties thereto shall proceed to have them duly partitioned; and that they shall also have said 30,370 acres surveyed in one solid body, and incorporate the field notes of the survey in their deed; said contract being the same as attached in full to and made 'Exhibit A,' to plaintiffs' first and second original petition, and also by defendant made a part of and an exhibit to defendant's first amended original answer.

"3. That at the time of making said contract on August 1, 1899, the said Agua Nueva de Arriba and La Noria de Santo Domingo tracts were unpartitioned, as also was another grant called 'Palitos Blancos,' containing 13,471 acres, out of which 4715 acres were to be conveyed under said contract.

"4. That thereafter, on or about October 1, 1899, plaintiffs' titles to all of said lands were approved by the defendant, and that plaintiffs thereupon had said lands surveyed in one solid body, and that said survey was also approved by the defendant; and that thereafter, to wit, on December 4, 1899, the plaintiffs and said Gertrudis de Martinez executed and delivered to the defendant a general warranty deed conveying or purporting to convey all of the lands included within the field notes of said survey, being 31,596.14 acres and embracing 5904 acres out of the said Agua Nueva de Arriba tract, 3523.1 acres out of the said La Noria de Santo Domingo tract, and 4246.64 acres out of said Palitos Blancos grant, which deed, notwithstanding a number of variations in the quantity of land conveyed in the various tracts and parcels, was accepted by the defendant as a sufficient compliance with their said contract as to such quantity; said deed being the same as attached in full and made 'Exhibit B' to both plaintiffs' first and second amended original petitions, and also by defendant made part of and an exhibit to defendant's first amended original answer.

"5. That at the time of the execution of said deed, dated December 4, 1899, and of its acceptance by defendant Weil, the said La Noria de Santo Domingo, Agua Nueva de Arriba and Palitos Blancos grants were each and all unpartitioned, and this fact was then known to said defendant Weil.

"6. That the agreed purchase price provided for in said contract of August 1, 1899, at the rate of $1 per acre for the said land in the said Agua Nueva de Arriba, La Noria de Santo Domingo and Palitos Blancos, aggregating 13,683.74 acres, was not paid at the time aforesaid deed was delivered, said three tracts or grants being then still unpartitioned, but that the defendant on said December 4, 1899, executed and delivered to these plaintiffs and to said Gertrudis Garcia de Martinez a certain instrument in writing bearing that date, wherein and whereby, after reciting said conveyance of even date to him and his payment for the remainder of said lands, and further reciting that the payment for said lands in said Palitos

Blancos grant had also been arranged and receipted for, the said defendant Charles Weil acknowledged, expressly agreed to and created and gave plaintiffs a vendor's lien upon the said lands in said Agua Nueva de Arriba and La Noria de Santo Domingo tracts, to secure the payment of the purchase price thereof as provided for in the aforesaid contract of sale of August 1, 1899; and undertook and obligated himself to pay the amounts of the said purchase price of said lands respectively in the city of Corpus Christi, Texas, upon the execution or securing deeds or decrees of partition, or both, of said lands, between all the parties interested in said Agua Nueva de Arriba and La Noria de Santo Domingo tracts or either of them and upon the execution and delivery of a complete release from this instrument, and the said vendors to secure such deeds or decrees of partition, and to have set apart to him or them therein those portions of said two tracts respectively that were included in the aforesaid deed of conveyance to him, and he to remain, meanwhile, in the possession of said premises, without rent or charge; said contract creating and giving said vendor's lien being the same as attached in full to and made 'Exhibit C' to both plaintiffs' first and second amended original petitions, and also by defendant made part of and an exhibit to defendant's first amended original answer.

"7. That thereafter, to wit, in the year of 1900, the said Palitos Blancos grant was partitioned and said 4256.64 acres therein fully paid for by defendant to plaintiffs at the price fixed in and according to said contract of August 1, 1899, save a part thereof held out by agreement of the parties.

"8. That on May 1, 1901, defendant paid, or advanced to plaintiff, the sum of $1000 to be used in procuring the partition of said tracts of Agua Nueva de Arriba and La Noria de Santo Domingo; said sum (by written agreement of that date between the parties hereto) to bear interest from said date at the rate of ten percent per annum until a settlement should be had with the plaintiffs for the balance of the purchase price on said lands under the terms of said vendor's lien obligation of December 4, 1899, and together with such interest to be credited on said vendor's lien obligation; and the said sum with interest being further secured by the written obligation of J. R. Monroe and F. W. Seabury, dated said May 1, 1901, whereby they bound themselves to the said Charles Weil that he should have the aforesaid credit on said vendor's lien obligation, and in default of said credit, or the payment to him of the sum and interest, they promised to pay to said Charles Weil the aforesaid sum with interest and ten percent attorney's fees; said written agreement and written obligation being the same instruments attached in full to and made 'Exhibit A' to defendant's first and second original answer.

"9. That in the year 1900 a suit was instituted in the District Court of Starr County, Texas, for the partition of said La Noria de Santo Domingo five league tract of land, but was subsequently dismissed; and that therefore, in the year 1907, these plaintiffs, with the many cotenants and owners of said tract, filed another suit in the District Court of Nueces County, Texas, for the partition of

said tract, said suit being numbered 4306, and entitled John H. Houghton et al. v. Charles Weil (the defendant herein), and on July 6, 1908, secured a final decree of partition by this court of the said tract of land, whereby there was allotted and set apart to said Charles Weil, as holding the equitable and possessory title thereto under conveyance reserving a vendor's lien, and to these plaintiffs in common ·among themselves as the holders of the legal title thereto reserved in the aforesaid conveyance to said Charles Weil, 3545.2 acres of land out of said tract as and being share No. 9 of said partition. That said decree of partition is the same as introduced in evidence by plaintiffs upon the trial of the present suit. That no demand was made by plaintiffs of defendant for the purchase price of said land in said La Noria Santo Domingo tract, nor was there any release of the said vendor's lien on said land offered or tendered to him by plaintiffs prior to the judgment herein, nor did defendant at any time before or after said partition offer to pay or tender the purchase money thereof until the tender in court hereinafter mentioned.

"10. That the defendant in his first amended original answer filed herein on July 15, 1908, alleged that he tendered into court the amount of the purchase price of the said 3545.2 acres of land on said share No. 9, in the said La Noria de Santo Domingo tract, and thereafter, to wit, on July 21, 1908, did in fact tender into court and pay over to the clerk of this court the sum of $1822.98 for and as the full amount of the purchase price as provided in said contract of sale between himself and plaintiffs of August 1, 1899, of said 3545.2 acres of land at the rate of $1 per acre, after deducting therefrom the aforesaid sum of $1000 with interest thereon from May 1, 1901, to said July 21, 1908, at the said rate of ten percent per annum; and the court now here finds the amount of said purchase price, after making such deduction, to be $1822.70.

"11. That in the year 1900 these plaintiffs, together with said Gertrudis G. Martinez and said Charles Weil and more than one hundred other cotenants and owners in the same tract, instituted in the District Court of Starr County, Texas, a suit for the partition of the Agua Nueva de Arriba tract, said suit being numbered 575 on the docket of said court, entitled Lazaro Ramirez et al. v. Manuel Guerra et al.; and thereafter, to wit, on March 20, 1902, a final decree of partition of the said tract was rendered by said court in the aforesaid cause, and in said decree there was allotted and set apart to said Charles Weil, as holding the equitable possessory title, and to these plaintiffs (the said Gertrudis G. Martinez having died pending said suit) as holding the legal title thereto, 5904 acres of land out of said tract, being share 41 of said partition, as described in plaintiffs' first and second amended original petitions, and with the following metes and bounds, as set out in said decree and in said petitions, to wit:

"Beginning at a stake 7555 varas N. 89½ W. from a rock and cement mound, the northeast corner of this said eight league tract of land. Thence N. 89½ W. 2500 varas to the northwest corner of this tract. Thence S. 2¼ W. 13,343 varas to a stake, the north-

west corner of share No. 17 for the southwest corner. Thence S. 89½ E. 2500 varas to the northeast corner of share No. 17. Thence N. 21¼ E. 13,343 varas to the place of beginning.

"That said Agua Nueva de Arriba tract was described in said decree of partition as a tract of 35,678 acres of land in Starr County, Texas, commonly known as the 'Agua Nueva de Arriba' tract, and being abstract No. 47 for Starr County, containing eight square leagues of land, more or less, confirmed to Jose Miguel Raminez, as confirmation No. 39 for Starr County by an Act of the Legislature of Texas, approved February 10, 1852, entitled: 'An Act to relinquish the right of the State to certain lands therein named,' and as patented by patent No. 2, volume 11, issued March 23, 1854, said tract being bounded on the north by the Palitos Blancos tract, originally granted to Rafael Garza Sais, and by various 640 acre surveys; on the east by the Las Animas tract, originally granted to Bruno, Nicholas and Matias Garsia y Garza; on the south by the Agua Nueva de Abajo tract, originally granted to Juan Manuel Raminez; and on the west by a tract called 'Santo Domingo de Abajo,' originally granted to Dionicio de la Garza. And that said decree of partition is the same as introduced in evidence by plaintiffs on the trial of this cause, and that said defendant, Charles Weil, was at all times fully informed of the institution, progress and result of the said suit for partition, and that he, the said Charles Weil, was a party thereto, and by the express terms of said decree the title to all of said partition share No. 41 was vested in said defendant Weil, as holding the equitable, possessory title, and to these plaintiffs as holding the legal title thereto.

"12. That shortly thereafter, to wit, on or about April 5, 1902, plaintiffs presented defendant with a copy of the said decree and demanded the payment of the purchase price of said 5904 acres of land out of said Agua Nueva de Arriba tract, so set apart to him and them in said partition, to wit, the sum of $5904, and thereafter at various times repeated said demand, and offered to execute and deliver to him, the defendant, a proper release of said vendor's lien thereon upon the receipt of the purchase money upon it provided in said contract of sale of August 1, 1899. That in response to said several demands defendant refused to pay said purchase money, and that the defendant on April 14, 1902, required of plaintiffs that they should have said decree recorded in the deed records of Starr County, present evidence of payment of all back taxes on said land, and deliver to him at Corpus Christi, Texas, a full release of said lien. That plaintiffs thereupon had said decree recorded, presented such evidence of payment of said back taxes, and on or about April 20, 1902, presented defendant in said town of Corpus Christi, Texas, a full release of the said lien (being the same introduced in evidence by plaintiffs on the trial of this cause) and demanded the payment of the purchase price of said land, and that defendant then and there absolutely refused to accept such release or to make said payment. That defendant thereafter in said month of April, 1902, demanded and required of plaintiff the production and delivery to him for examination of the original map of said Agua Nueva de

Arriba partition; and that the plaintiffs so secured and delivered to him the said map, being the same map introduced in evidence by plaintiffs on the trial of this cause. That defendant then, on or about May 10, 1902, required of plaintiffs that they should have said partition share No. 41 resurveyed by a surveyor of defendant's selection, and that plaintiffs then had the said share so resurveyed on the ground by one C. F. H. von Blucher, selected by defendant, and that the survey was made by said Blucher, and as reported by him showed that the said share No. 41, as staked out on the ground, included about 5400 acres of the said 5904 acres of land described and included in plaintiffs' said deed of December 4, 1899, together with a strip of additional land on the west, but failed to include a strip of between one and two hundred acres on the south, out of said 5904 acres so described in said deed, and also left to the west of said share No. 41, and between it and the said Santo Domingo grant, originally granted to Dionicio de la Garza (an adjoining part of which grant was conveyed to defendant in said deed of December 4, 1899), a strip of about 360 acres, running its whole length, and dividing said share from the other lands included and described in said deed, and said strip, if it really exists, preventing said share from being in a solid body with said Santo Domingo de Abajo lands; said strips being as shown on Blucher's map as A and B, offered in evidence by plaintiffs on the trial of this cause.

"That thereafter, during the months of June, July and August, 1902, plaintiffs frequently demanded of defendant the payment of said $5904, which payment defendant then and there refused to make, and assigned to plaintiffs as his sole reason for such refusal the same matters and reasons as later assigned by him on October 3, 1902, and as hereinafter fully set out. That on or shortly before the 3d day of October, 1902, the said plaintiffs tendered to defendant, in the city of Corpus Christi, Texas, their deed and release in due form, dated December 8, 1902, being the same as attached to, and made exhibit D, both to plaintiffs' first and second amended original petitions, wherein they conveyed to defendant all of said share No. 41, as described in said decree of partition, and released the aforesaid vendor's lien on the said 5904 acres, as described and created in the aforesaid deed and vendor's lien obligation of date December 4, 1899; and that on said October 3, 1902, the defendant absolutely refused to accept said deed and release or to pay the said purchase money for said Agua Nueva de Arriba land, and assigned to plaintiffs as his sole reason for such refusal, the fact that said original contract provided that all of the land should be in a solid body, and that the instrument tendered failed to comply with that requirement; and that the aforesaid strip found by said C. H. F. von Blucher, between said share No. 41 and the remainder of said land, did in fact exist, and did in fact prevent share No. 41 from being in a solid body with said other lands, as required by the aforesaid contract of sale. And that at various other times, before the institution of this suit and thereafter, the defendant has continuously and absolutely failed and refused to pay said sum of money, or to take said share No. 41, at all times basing his re-

fusal solely on the grounds so alleged by him on October 3, 1902; that said share No. 41 was, as aforesaid, not in a solid body with the other lands aforesaid, as required by said contract of sale.

"That plaintiffs at the time of such refusal declared, and have ever since declared, that they were satisfied with the aforesaid action of the defendant in exercising his option, under said contract of sale, of refusing to take the said share No. 41; and they, said plaintiffs, at said times of refusal demanded of defendant that he return and reconvey to them their said land, together with any interest he might have therein, or that he release them from any incumbrance or cloud existing thereon by reason of the contracts and conveyance aforesaid, but that defendant, on said October 3, 1902, and on the other occasions aforesaid of his refusal to take said lands and pay said sum of money, refused, and has ever since refused, to execute such reconveyance or release or to deliver up said land.

"13.    That the defendant, Charles Weil, entered into possession of all the lands described in the aforesaid deed of December 4, 1899, on or about February 1, 1900, and that he has had continuous and exclusive possession of all of said lands from that date to date of judgment herein, using the same as a pasture and grazing cattle, etc., thereon, and having, holding and using, within the fences of his said pasture, not less than 5760 acres of land out of said Agua Nueva de Arriba tract, and out of said partition share No. 41 thereof.

"That the said defendant, Charles Weil, has had and held such continuous and exclusive possession of all the land embraced within the share No. 41 of the Agua Nueva de Arriba tract, from April 1, 1902, down to the date of judgment herein, and has during said period had the sole and exclusive use, benefit and profit of the said lands, and has continuously used the same as a part of his pasture, and for grazing cattle thereon; that the said share No. 41 is at present of the fair market value of at least $3 per acre, and that the fair and reasonable rental value of the said land in said share No. 41, from April 5, 1902, to the date of judgment herein, is not less than ten cents per acre per annum average through said period, and that the value of the rentals of said share No. 41 during said period as aforesaid, amount to the sum of $3739.20 at said rate of ten cents per acre per annum.

"14.    That at various times before, during and subsequent to the making of the aforesaid contract of sale, deed and vendor's lien obligation, and the delivery of possession of the said premises, the plaintiffs and the defendant made and had various verbal agreements and understandings in regard to building and rebuilding of fences on the outer line of the lands sold by plaintiffs to defendant. That there is an irreconcilable conflict between the parties thereto as to the terms of such agreements and understandings; but the court finds that none of said understandings and agreements was reduced to writing, or incorporated in any of the former contracts in writing made by and between the parties, but that all of the same were collateral and additional agreements and understandings, and not at all intended by the parties to be engrafted as conditions on the

aforesaid contract for the sale of said lands, or for the aforesaid deed, or vendor's lien obligation.

"15.  That the said defendant, Charles Weil, after taking possession of said lands, including said share No. 41 in the partition of the Agua Nueva de Arriba tract, and before the filing of this suit constructed a well and watering place on said share No. 41 at a cost to him of $750, and also ran two cross fences across the whole of said ranch, from the west line of the said land in said La Noria de Santo Domingo grant to the east line of said land in said Agua Nueva de Arriba tract, at a cost to him of $525 for the part thereof on said share No. 41."

The first assignment of error is addressed to the action of the court in overruling the general demurrer, and can not be sustained.  Appellees' right to recover, and the judgment of the court, are not based upon their having had the land out of the Arriba grant so partitioned as to embrace exactly the land conveyed by the deed, but upon appellant's refusal to take and pay for the land so partitioned, in the exercise of his option to do so, acquiesced in by appellees as set out in the contract of sale, which clearly appears to have been in the minds of the parties through the entire transaction.  Having elected not to take and pay for this tract, and appellees having acquiesced therein, in equity and good conscience appellant could not keep the land.  Appellant's contention, which goes to the root of his defense, is that the contract of sale containing this option provision, as shown in our findings of fact, was entirely abrogated by and of no obligatory force after the execution of the deed and vendor's lien contract, and that appellees were bound, without reservation or condition, to have such partition made as was approved by and satisfactory to appellant, and that until this was done appellant, while holding the land as conveyed by his deed, was not required to pay for it.  To this we can not agree.  The third special exception to the petition clearly shows that it was not so understood, but that the terms and obligations of the original contract of sale with regard to these ·unpartitioned lands, remained a part of the contract and agreement of the parties. ˙ This contract contains the only obligation to have these lands so partitioned as to lie in one solid body, the failure to do which is shown to have been the sole objection on the part of appellant to take the Arriba tract, partitioned as share 41, it being claimed that this tract was separated from the other land by a narrow strip.  Throughout his pleadings appellant refers to the failure of appellees to comply with the provisions of his said "contract" and "agreements," referring to both the original contract of sale and the agreement contained in the vendor's lien contract. It was shown that the Arriba lands were unpartitioned and that appellees as owners of undivided interests could not absolutely control such partition and take their shares where they chose.  It was to cover the contingency of their failure to have the land so partitioned as to include exactly the land embraced in the deed out of this tract and forming a solid body with the other land conveyed, that the option agreement was made, and, as to this land, this contingency still remained after the execution of the deed.  The parti-

tion had been made and was binding upon all of the parties to it. The evidence tends strongly to show that plaintiffs intended to have the Arriba land so partitioned as to include in share 41, awarded to appellant, the land embraced in their deed, and thought they had done so. The petition presented a good cause of action and the court did not err in overruling the general demurrer.

This practically disposes of this appeal, except as to certain minor details, as every material fact alleged in the petition was found in the trial court, upon sufficient evidence, in favor of appellees.

Without expressly so deciding, it suggests itself to us that even if the original contract is not to be considered as of any obligatory force after the execution of the deed and vendor's lien contract, the land having been partitioned by the decree, and the interest of appellees absolutely settled beyond the possibility of recall, if thereby it is placed beyond the power of appellees to comply strictly with their contract, absolute as claimed by appellant, he could not in such case retain his right under the deed to that part of the Arriba land embraced therein and refuse to pay for the same, but would either have to consent to a rescission of this contract, or pay for the land and rely upon an action of damages for failure on the part of appellees to comply with their said contract. This appellant did not seek to do, but sought to keep the land and the money also, until appellees complied with what is manifestly a practically impossible condition.

We have discussed these questions, as they arise upon the general demurrer, at greater length than would have otherwise been necessary, for the reason that here is the pith of appellant's case as presented by the pleadings and evidence.

The court did not err in overruling the first special exception, that the petition did not sufficiently describe the land and was too vague, uncertain and indefinite. The second assignment of error presenting the point is without merit.

What we have said in discussing the first assignment renders any discussion of the third assignment unnecessary, and it is overruled.

The third special exception to the petition is, in substance, that the petition shows that the title to the land had been accepted by appellant, and had been followed by an obligation in writing whereby the conditions of the original contract of sale, insofar as they had not been complied with by appellees, were renewed and the appellees bound themselves to comply with said conditions, and the petition fails to allege a compliance with such conditions. The exception was not well taken. The right of recovery was rested upon an entirely different ground, to wit, the refusal of appellant to take and pay for the land, thereby exercising the option reserved by him in the contract. There is no merit in the fourth assignment, nor in the fifth assignment, that by the allegations of the petition it appeared that appellees had not complied with the general warranty of title in the deed.

The sixth, seventh, eighth, ninth and tenth assignments of error and propositions thereunder do not require any further discussion,

after what has been said in disposing of other assignments, and are severally overruled.

By the eleventh assignment of error appellant assails the findings of fact of the trial court, as set out in the second paragraph thereof, on the ground that there is no evidence to sustain the same. The proposition under this assignment is that "A finding of fact by the court should reflect the spirit and substance of the matters from which he finds, otherwise the finding is insufficient and should not be sustained." The proposition presents a question entirely different from that presented by the assignment. The statement does not pretend to show from the evidence that the facts so found by the trial court, being really the substance of certain contracts introduced in evidence and referred to as part of the findings, are not supported by the evidence. The assignment will not be considered. Our approval and adoption of the court's findings of fact operate to overrule this and other assignments addressed to certain portions of such fact findings, as not supported by the evidence.

What is said with regard to the eleventh assignment applies also to the twelfth and thirteenth assignments.

Objection is made by the sixteenth assignment of error to the conclusions of fact set out in the eleventh paragraph of such conclusions. The statement under the proposition refers alone to the finding that "at all times the defendant, Charles Weil, was fully informed of the institution, progress and result of the said suit for partition, and in all things fully acquiesced in the same." In the statement is set out only the testimony of Charles Weil, which tends to show that he left the whole matter of the partition of the Arriba tract to appellees, and relied upon them wholly. It is not stated either directly or by inference that this is all the evidence on this point. From aught that appears in the statement there may be abundance of evidence in the record to contradict Weil and support the conclusion of the trial court. Taking the entire statement from the record accompanying the assignment as absolutely true and sustained by the record, we can not say that the conclusion of fact referred to is not supported by other testimony, the existence of which is not, either directly or inferentially, negatived. If appellant had stated that this was all the evidence on this point, it would have been taken as true unless denied by appellees, under Rule 41. But here there is nothing appellees are called upon to deny.

The evidence was sufficient to support the finding of the trial court set out in the seventeenth assignment, that appellant gave as his sole reason for refusing to accept and pay for the Arriba land, partitioned to him as share 41, that the original contract of sale provided that the lands should be in a solid body with the other lands, and that there was a strip between this tract and the other lands. Here, as in the assignment above referred to, the statement under the assignment does not purport to give all of the testimony upon the point, but only the letter of Scott, tending to show that there were other reasons, not stating them, however. The testimony of Seabury, not referred to in appellant's statement, certainly sustains the court's findings in the matter indicated. The assignment is overruled.

The eighteenth assignment assails the conclusion of fact of the trial court set out in the thirteenth paragraph thereof relating to appellant's possession of the land, the value of the land, and that the rental value from April 5, 1902, to the date of judgment is not less than ten cents per acre per annum, and that the value of the rental of share 41 during that period amounted to $3739. The ground of the objection is that the finding is not supported by the evidence. This objection can not be sustained. In the statement it is said that the finding is objected to because it fixes the date of rent from April 5, 1902. The assignment does not present the question of error in allowing rent from April 5, 1902; but only the question of the sufficiency of the evidence to authorize the finding as to the value of rents from that date, and must be overruled. The question probably intended to be presented here is presented in the twenty-ninth assignment of error.

The nineteenth assignment of error relating to the finding of fact set out in the fourteenth paragraph thereof is overruled without discussion.

What we have said in disposing of the first assignment of error also disposes of the twenty-second assignment complaining of the court's conclusion of law that under the second, third, fourth, fifth, sixth and fourteenth findings of fact the rights of the parties are fixed and determined by the original contract of sale, the deed and the vendor's lien obligation, and are not affected by the verbal agreements or understandings between them. The latter portion of this finding refers to certain verbal agreements, as to which there was some evidence, with regard to placing the fence on the outside line. The primary objection to this conclusion of law, however, is that, upon the execution of the deed and vendor's agreement, the original contract of sale was entirely abrogated and could no longer be looked to in determining the rights of the parties, having reference entirely to that part of the original contract with regard to the option of appellant to refuse to take any one of the unpartitioned tracts, without losing his right to take the balance of the land, if upon partition it was found to be not in a solid body with the others, if agreeable to appellees. In this contention, as we have shown, we think appellant is in error. The assignment is overruled.

The objections to certain of the conclusions of law set out in the twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-eighth assignments of error do not require any further discussion and are overruled.

The twenty-ninth assignment may be considered, in connection with the eighteenth assignment, as presenting, though not at all clearly, the question that in estimating the amount of rent adjudged to appellees, it was error to allow such rents from April 5, 1902. The amount awarded was $3739.20. In the decree the court adjudged to appellees rent on the 5904 acres at ten cents per annum from April 1, 1902, to April, 1908, which he finds to be $3739.20. The correct amount of rent for that time would be $3542.40. The amount really adjudged is the amount which would be due from April 1, 1902, to date of the judgment August 1, 1908. This error,

however, is not pointed out in the brief. We think that appellant should be required to pay rent only from the date that appellees acquiesced in his refusal to take the land, which appears to have been October 3, 1902. Up to this date, it seems that appellant continued to make objections to the partition and appellees continued to press him to take the land and pay for it. The judgment in this particular will be reformed so as to allow appellees rent from October 3, 1902, to August 1, 1908, the date of the judgment, amounting to $3437.40.

We think that the judgment was erroneous in refusing to allow appellant pay for the improvements placed by him on the lands, and that the tenth conclusion of law of the trial court as set out in the thirtieth assignment of error is erroneous. The findings of fact show that appellant entered into possession of this land, as he had a right to do under the contracts between the parties, relying upon the agreement with regard to the partition, and in good faith assuming that the land would be so partitioned as that there would be no reason for his refusal to take it. We think in equity he should have pay for permanent and valuable improvements placed by him on the land in such circumstances. (Patrick v. Roach, 21 Texas, 256; Eberling v. Deutscher Verein, 72 Texas, 339.) The judgment will be so reformed as to adjudge to appellant the value of such improvements which, as found by the court, is $1225, but in his answer he only claimed as the value of improvements placed on the Arriba tract $1000, and his recovery must be limited to that amount.

In appellant's amended answer filed July 15, 1908, appellant offered to pay whatever the court might find to be due appellees for the land in event the court should find that appellees had complied with their part of said agreements by doing the things undertaken to be done by them, and complaint is made of the action of the court in not allowing appellant to do this and keep the land, by the decree. No money was actually tendered in court. This conditional offer came for the first time six years after the suit had been filed, and after the land had very largely increased in value. After absolute denial of appellees' right to demand payment, and resistance of their claim for either money or land requiring the bringing of this suit, and persisted in through the six years that the suit has been pending, and after the large increase in value of the land, there was no equity in appellant's belated claim thus set up, and the court did not err in refusing to entertain it. Appellant had made his election and must stand by it. (Pom. Sp. Perf., secs. 407-8; Fullerton v. Doyle, 18 Texas, 4.)

The remaining two assignments of error present no ground for reversing the judgment and do not require further discussion. They are severally overruled.

We find no grounds for reversing the judgment and remanding the cause. The judgment should be reformed in the matter of rents and improvements as herein indicated, and, as so reformed, should be affirmed at the costs of appellees, and it is so ordered.

*Reformed and affirmed.*

Writ of error refused.