EDWIN HALL and LEVI JONES, Plaintiffs in Error, vs. OLIVER P. JACKSON, Defendant in Error — Writ of Error from Harris County.

The court, in ordering a change of venue under the act of 16th January, 1843, must be presumed to have acted rightly, until the contrary appears. The presumption is, that the circumstances existed which brought the case within the provisions of the statute. [12 Tex. 327; 19 Tex. 406.]

Facts not alleged, though proved, cannot form the basis of a decree or judgment. [1 Tex. 443; 4 Tex. 381; 6 Tex. 313; 9 Tex. 73; 10 Tex. 213; 15 Tex. 159; 16 Tex. 400, 549; 17 Tex. 438; 21 Tex. 508; 25 Tex. 352; 23 Tex. 219.]

That a judgment has been taken by default does not dispense with the rule which requires that the proofs shall conform to the allegations; and that the latter must be sufficient to constitute a legal basis on which to predicate the judgment.

To maintain a judgment by default, the petition must set forth a *cause of action*, with substantial accuracy, and with sufficient certainty to inform the court what judgment to render, without looking for information to proofs not within the allegations.

This was a suit to compel the specific performance of a contract, instituted by the defendant in error against the plaintiffs in error, in the Galveston district court, and returnable to the fall term, 1841.

The petition is as follows: " The petition of Oliver P. Jackson represents, that Edwin Hall and Levi Jones are joint partners of certain lands lying on the island of Galveston; and that the said Edwin Hall, one of the partners, in New Orleans, on the 28th of June, in the year 1838, received of said Oliver P. Jackson the following pieces of land scrip of said republic for location, to wit: Nos. 13, 15, 16 and 17, containing 640 acres each; and also, one piece for 320 acres, No. 83, making, in all, two thousand eight hundred and eighty acres; for locating which, the said Hall was to receive one-fourth of the quantity of land for his services; all of which will more fully appear by reference to the receipt of said Hall, which is hereto annexed, and made a part of this petition. And your petitioner alleges that all, or much the greater portion, of said scrip was located on lands lying on the said island of Galveston, and held, as aforesaid, by the said Hall and Jones, jointly. But the said Hall and Jones have not yet made title to said

20

lands so located, or any part thereof, to your petitioner, though often requested," etc.; concluding with a prayer that the defendants be decreed to make to the plaintiff, a title to "all such lands as shall be proved to have been located, according to the terms of the agreement.".

The receipt referred to in the petition is in these words: "R'd from O. P. Jackson, Esq'r, four pieces Texas government land scrip, of six hundred and forty acres each, viz.: No. 13, 15, 16 and 17, making 2,560 acres; also, 1 pe. of 320 acres do., making in all twenty-eight hundred and eighty acres; to locate the same, receiving for my services, in making said location, one-fourth of the quantity of land thus located. New Orleans, June 25th, 1838." (Signed) "EDWIN HALL." (Indorsed) "OLIVER P. JACKSON."

Service was perfected in April, 1841. Nothing appears of any further proceedings in the cause until the spring term, 1843, when the following entry appears to have been made: "In this case, the presiding judge being of counsel, it is ordered that the venue of the case be changed to Harris county."

. The case was accordingly transferred to the county of Harris, and the petition filed in the office of the clerk of the district court of that county on the 22d day of January, 1844. At the spring term thereafter, an interlocutory judgment by default was taken; and on the 2d day of May, in that term, the final decree or judgment by default was entered, as follows: "A judgment *pro confesso* having been heretofore, at this term of the court, taken by the plaintiff in this cause, and the same having come on to be heard for final decree; and it appearing to the court that the defendant, Hall, on the 28th day of June, 1838, received from the plaintiff for location, upon the terms specified in the plaintiff's petition, land scrip of the republic of Texas, amounting to 2,880 acres; and it further appearing that said Hall and Jones consolidated certain scrip, of which that received from plaintiff was a part; and that the whole was located and surveyed in one connected body, on the island of Galveston, in the county of Galveston; and that, for the whole quantity, including said scrip received

by said defendant, Hall, from said plaintiff, a patent in the name of the republic of Texas, has issued to said defendants as joint tenants, or tenants in common; and also, that the said defendant, Jones, had notice that the said defendant, Hall, held said scrip of said plaintiff, for the benefit of said plaintiff, upon the terms of the agreement mentioned in said plaintiff's petition; and it also appearing right and equitable that the defendants should convey," etc., proceeding to decree a conveyance by the defendants to the plaintiff of 2,160 acres of land upon Galveston island, in the county of Galveston, of the survey made and patented in the name of the defendants. The decree concludes by appointing commissioners " to lay off and have surveyed, according to quality of the lands patented to the said defendants, twenty-one hundred and sixty acres; and that, within six months, they file their report, together with a plat of the survey and field notes; and that said report, unless objected to at the next term of this court, constitute a part of this decree, which is otherwise final."

Upon this decree, a notice was issued to the commissioners appointed, and execution for costs against the defendants, who subsequently obtained this writ of error.

FRANKLIN for plaintiffs in error.

1st. The district court of Harris county had no jurisdiction of this cause, the judge presiding in Galveston having no authority, " *mero motu*," to change the venue or transfer the cause to Harris county.

2d. The judgment or decree entered was irregular and erroneous, the judgment by default not having been previously entered.

3d. The petition presented a case so vague, uncertain and indefinite, that no judgment or decree could be made in accordance with its prayer.

4th. The judgment or decree rendered was irregular, and founded on a statement of facts that did not exist; and there was no allegation in the petition under which such facts could be presumed or could have been introduced in evidence.

5th. No jury was impaneled to find the facts, the suit not being for a liquidated demand.

JONES, same side.

WEBB for defendant in error.

There is no statement of facts in the record, except such as is found in the decree of the court, and that *statement of the facts* fully sustains the decree, in the terms in which it was rendered. [Wiscart *vs.* Dauchy, 1 U. S. Cond. R. 148.]

The defendants made no objection, in the court below, to the decree, although they had notice of the pendency of the suit more than twelve months before it was rendered. They filed neither answer nor plea, nor in any other way denied the allegations of the plaintiff's petition.

They could not have been taken by surprise, because the decree was not rendered in Harris county until twelve months after the change of venue was ordered; and having had notice of the pendency of the suit, they must have had notice of the change of venue. [4 Bibb, 399.]

No objection having been made to the order of the judge for a change of venue, the presumption is that it was assented to by the parties.

Mr. Justice WHEELER, after stating the facts of the case, delivered the opinion of the court.

To reverse the judgment, several objections to its legality are urged; of which, those which are deemed to require particular notice are, in substance:

1. That there was no legal change of venue, and that the district court of Harris county had no jurisdiction of the case.

2. That the petition does not contain averments sufficient to authorize the proof, upon which the decree professes to be based; and that it is so " vague, uncertain and indefinite, that no judgment or decree can be rendered upon it, in accordance with the prayer of the petitioner."

The first question here presented was, in effect, decided at the last term, in the case of Borden *vs.* The Republic. The act of

the 16th January, 1843 [7 Stat. 36], made it the duty of the court to change the venue in certain cases; and the presumption is, that the circumstances existed which brought the present case within the provisions of the statute. The court at Galveston must be presumed to have acted rightly, until the contrary appears. The defendants had been served with process, and must be presumed to have been cognizant of the action of the court; and if prejudicial to the rights, or not taken upon grounds legal and correct, it was incumbent on them, as vigilant suitors, to have contested the order of which they are now first heard to complain [4 Bibb, 399]; or, at least, to have brought up the record of all the proceedings at Galveston, with the grounds upon which the court awarded the change of venue, in order that we might be thus enabled to revise the action of the court complained of, and ascertain if, indeed, any error existed. The court at Galveston had the legal power to change the venue. There is nothing in the record showing that it was not rightly exercised in the present instance; and every presumption is to be indulged in favor of the judgment.

The remaining objection is entitled to graver consideration.

In the case of Harrison *vs.* Nixon [9 Peters' R. 483], the supreme court expressly decided that "every bill must contain in itself sufficient matter of fact *per se* to maintain the case of the plaintiff;" that "the proofs must be according to the allegations of the parties; and if the proofs go to matters not within the allegations, the court cannot judicially act upon them as a ground of its decision." [Id. 503, per STORY, J.] In Morrison *vs.* Hart [2 Bibb, 4], it was held by the court of appeals of Kentucky that facts not alleged cannot, though proved, constitute the basis of a decree or judgment; the court saying, " a fact not alleged can no more, in a court of equity than in a court of law, constitute a basis upon which an adjudication may be founded — it being equally true that the chancellor as well as the judge must decide according to the allegations and the proofs." [Id. 6–7.] In a note to Lubé's Equity Pleading [p. 193, N. 1], the following references are made in support of the same principle: " The complainant must state and show all the

facts necessary to entitle him to the aid of the court." [6 Cowen, 37.] "And the decree must be conformable to the case stated in the bill." [Coffman vs. Allen, Litt. Sel. Ca. 200.] "And the allegations in the bill must form the basis of the decree." [3 A. K. Marsh. 474.] "And it ought to allege the case so precisely as to enable the chancellor to determine if he has jurisdiction, and to decide on the proper decree." [2 A. K. Marsh. 317.] "And a fact not alleged, though proved, cannot form the basis of a decree." [2 Bibb, 4.] "And though the plaintiff should make out a good case by proof, yet, if it be not the case made by the bill, it will not do." [5 Mumf. 314.] Indeed, the proposition that facts not alleged, though proved, cannot form the basis of a decree or judgment, seems almost too clear, upon obvious principle, to require the support of authorities, and may be regarded as the already recognized and settled doctrine of this court. [1 Texas R. 93, 447; also, Wright vs. Wright, decided at the present term.]

That the present was a judgment by default cannot alter the case, or dispense with the rule which requires that the proofs shall conform to the allegations; and that the latter must be sufficient to constitute a legal basis on which to predicate the judgment. The defendants, not having appeared, can be deemed to have waived nothing which was essential to the plaintiff's title and right to recover.

In Virginia it has even been held that the statute of *jeofails* does not apply to cure errors and defects in the proceedings in cases of judgments by default; and that defects which would be cured by verdict in other cases will in these be held fatal. [3 Leigh, 270.] But without going quite this length it may safely be asserted that, to maintain a judgment by default, the petition must set forth a *cause of action* with substantial accuracy [3 Scammon, 258], and with sufficient certainty to inform the court what judgment to render without looking for information to proofs not within the allegations, since "the court cannot judicially act upon" such proofs "as a ground for its decision."

That the petition in the present case does not conform to these requirements is, we think, apparent. It contains no de-

scription by which to identify the lands for which the plaintiff seeks to coerce a conveyance. It contains no positive and certain averment of the place of their location. It does not aver that they have ever been patented; or that the defendants have obtained, and are able to make to the plaintiff, a title. Though it seeks to divest the right and title of the defendant, Jones, to lands which, it alleges, he holds jointly with his co-defendant, it contains no averment charging him with any privity, or, as a purchaser, with notice of the plaintiff's interest. Yet, to effect his interests, this was essential. [Story's Eq. secs. 783 to 790; 6 Johns. Ch. R. 398, 402, 403.] It does not seek a conveyance of the interest of Hall, only, but of lands held jointly by Hall and Jones, yet the only averment affecting Jones is, that he is the partner of Hall, and joint owner, with him, of the lands in question. In its statement of the cause of action, and especially in respect to the identity of the thing claimed, the petition is, indeed (in the language of the assignment of errors), "vague, uncertain and indefinite," and so defective as that no judgment can be given upon it.

How far the facts recited in the decree, if alleged, would supply the omissions and defects in the petition, it is not material to inquire; since those facts, not alleged, though proved, cannot constitute the basis of an adjudication. But it may well be doubted, whether a decree, so indefinite as to the thing adjudged, could ever be executed, or could vest in the party claiming under it any available, valid title to any specific lands. What information does it give the commissioners appointed under it, respecting the manner in which they are to perform the duty assigned them? How are they to know from it where to designate, survey and set apart the 2,160 acres of land decreed to the plaintiff? Out of what particular lands? By what patent conveyed?

To suppose the commissioners able to execute this decree, would be to suppose them invested with very extrordinary powers, and an almost unlimited discretion. If, however, the decree, upon its face, appeared sufficient to divest the title of the defendant to any specific lands, yet, being based upon ma-

terial facts which are not alleged, and which, therefore, cannot constitute the basis of a decree or judgment, it cannot be supported.

The judgment must, therefore, be reversed, and the cause remanded, that the plaintiff may have leave to amend, and for further proceedings.