TIMPSON & H. RY. CO. v. SMITH et al.

(Court of Civil Appeals of Texas. Texarkana. March 4, 1914. Rehearing Denied March 26, 1914.)

1. RAILROADS (§ 108*)—CONSTRUCTION—OPENINGS IN ROADBED—WATER COURSES.

Under Rev. St. 1911, arts. 6485, 6495, respectively, providing that railroad companies may construct their roads across any stream of water, but shall restore such stream of water to its former state, or to such a state as shall not impair its usefulness, and that they shall in no case construct a roadbed without the necessary culverts or sluices as required by the natural lay of the land, it is proper to compel a railroad company by injunction to construct in its roadbed openings and sluiceways in such a manner that surface waters and natural

streams will have outlets, and will not overflow the adjoining land.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 333–336; Dec. Dig. § 108.*]

2. RAILROADS (§ 113*)—INJURIES TO LAND—PERSONS ENTITLED TO SUE. .

Where a railroad company, which had contracted for a right of way, took dirt from land outside its right of way, this act was an independent trespass entitling the then owner to recover damages, and such right did not pass to a subsequent grantee of the land, unless it was specially conveyed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 230, 351–357, 359–361, 363, 364; Dec. Dig. § 113.*]

3. JUDGMENT (§ 248*)—CONFORMITY TO PLEADING.

In an action against a railroad company for damages for constructing its line over plaintiff's land, the railroad company set up that it contracted with plaintiff's predecessor in title for a right of way 100 feet wide; that in several instances it became necessary to take dirt from the adjoining land which it did; that the then owner agreed to accept the sum of $5 as compensation; and it tendered to plaintiff the sums agreed to be paid for the right of way and for the dirt taken, praying specific performance of the contract. Held that, as the proof of facts not alleged, although admitted without objection, can furnish no basis for a judgment, a judgment for plaintiff for damages for the taking of soil outside of the right of way cannot be sustained; there being no pleading that the rights of the then owner for the trespasses were assigned, but a judgment for the amount tendered for such damages will be sustained.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434; Dec. Dig. § 248.*]

4. SPECIFIC PERFORMANCE (§ 12*)—RIGHT TO SPECIFIC PERFORMANCE—DEFENSES.

Where a railroad company constructed its line under a written contract for the purchase of a right of way, specific performance will not be denied because it had not made reparation for independent trespasses upon other land of the owner of the right of way.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 26–28, 37; Dec. Dig. § 12.*]

Appeal from District Court, Rusk County; W. C. Buford, Judge.

Action by J. E. and Joe Smith against the Timpson & Henderson Railway Company. From a judgment for plaintiffs, defendant appeals. Modified and affirmed.

Brooke & Woolworth, of Carthage, and Chas. L. Brachfield, of Henderson, for appellant. John R. Arnold, of Henderson, for appellees.

HODGES, J. In May, 1913, the appellees, J. E. and Joe Smith, instituted this suit against the appellant, alleging, in substance, that they were the owners in fee simple and entitled to the possession of a tract of land situated in Rusk county, a part of the Cherino survey, which is fully described by metes and bounds; that in October, 1909, the Timpson & Henderson Railway Company, appellant herein, unlawfully entered upon said land, constructed a roadbed and railroad thereon, and appropriated to its own use for that purpose about 8 acres, consisting of a

strip 200 feet wide, and thereby greatly damaged the remainder of the land; that the railway company has paid to the owner of the above-described land no part of the damages resulting from the wrongful appropriation of the land and the construction of its road upon the strip above mentioned.

In the next succeeding paragraph the petition is as follows: "If the Timpson & Henderson Railway Company has or should legally acquire the right to locate, build, and maintain its roadbed and railroad on and across said land, farm, and premises, and appropriate to its use and benefit the land so taken by it, then plaintiffs would show that defendant unlawfully and negligently constructed said roadbed and railroad on, over, and across said land, farm, and premises, and adjacent thereto, and by reason thereof every recurring rain floods and deposits water, dirt, drift, and débris on, over, and across said land, farm, and premises, filling and obstructing the water courses and natural drainage, which increasingly and recurringly damages said land, farm, and premises, rendering it unfit for the uses to which it was designed and suitable." Then follow averments more specifically describing the physical conditions existing at the time the roadbed was constructed, the changes made by such construction, and their effect upon the flow of the water. The . petition also states in detail the extent and character of the injury claimed that resulted from the construction of the railway and the failure on the part of the appellant to provide sufficient outlets for the flow of the surface water. The damages are thus itemized: The value of the 8 acres appropriated for the roadbed, $400. "The so taking in the manner, form, and place as done has damaged the adjacent parts of said land, farm, and premises $400." Filling up the natural water courses, the continuous deposits of sand and other material over the farm by the recurring rains, $1,600. The probable damages likely to result in the future, if the improper conditions brought about·are not corrected, are placed at $2,500.

The petition concludes as follows: "Plaintiffs have repeatedly asked defendant, its president and officials, to make due compensation for the wrongs, trespasses, and injuries above alleged, and to restore said land, farm, and premises to the condition the same were in when so entered and altered by defendant, and to prevent further recurring and continued injuries and damages to said land, farm, and premises, all of which the defendant has willfully and negligently failed and refused to do, to plaintiffs' damage $3,000. Wherefore plaintiffs sue, praying for citation to defendant to answer herein, and, upon trial of this cause, for judgment and decree for title and possession of that portion of said land taken, held, and used by defendant as above alleged, for full and adequate damages done and caused by defendant to said

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

land, farm, and premises, for an order compelling defendant to restore the surface drainage, water courses, and streams on and adjacent to said land, farm, and premises to their original and safe condition as they were at the time defendant entered thereon and did and caused the things and damages above alleged; and, in case defendant shows, seeks, or acquires the lawful right to hold and use any portion of said land, farm, and premises for any lawful purpose, for a full and adequate compensation for the land so taken, damages to the whole of said land, farm, and premises done and caused, as above alleged, and that may accrue therefrom in the future to said land, farm, and premises, and for an order compelling the defendant to restore and maintain the surface drainage, streams, and water courses on and near said land, farm, and premises to their original safe conditions," etc.

The appellant answered by a general demurrer and special exceptions and a general denial, after which appellant specially pleaded in substance as follows: (1) The statute of limitation of two years. (2) That at the time of the construction of the line of railway upon the land in question the railway company was entitled to go upon the land and construct its railroad thereon; that it did so with the full knowledge of the then owner and claimant of the land, and under a contract in writing, and that the owner and the plaintiffs saw and knew that the defendant was grading said road and expending money thereon for the purpose of operating its trains over the same; that the then owner and claimant of the land, knowing that the defendant company was expending a large amount of money in the construction of said roadbed for the purpose of permanently operating its trains over the same, permitted the company to so build and construct its line of railroad; that, by reason of this, plaintiffs are now estopped to claim that defendant is a trespasser. (3) It is alleged that the railway company entered upon said land by virtue of an agreement and contract in writing entered into between the defendant company and I. M. Wylie, who was on the —— day of October, 1909, the owner in fee simple of the land described in the plaintiffs' petition; that the terms of that contract were, in substance, as follows: That the defendant was to go upon the land and construct its roadbed over the same; that is to say, the defendant company was to have a strip of land 100 feet wide, extending across the tract approximately —— feet, upon which to construct its roadbed; that the defendant company was to pay to Wylie for this strip of land the sum of $30; that Wylie agreed to execute to the defendant his warranty deed conveying said strip of land; that this contract and agreement was in writing as aforesaid, signed by said Wylie and the defendant company, but that the same has been lost or mislaid, and cannot now be found; that, acting upon said written contract for the purchase of the above strip of land, the defendant company went upon the same with the full knowledge and consent of Wylie, the then owner, and constructed its roadbed; in doing this, it became necessary that the defendant take more dirt than was contained within the 100 feet theretofore acquired by the contract referred to, and the defendant company did, in fact, at four separate places on said tract of land, take a small amount of dirt outside of the right of way contracted for; that the taking of this dirt in the places mentioned was well known to Wylie at the time; that immediately after the defendant company had a verbal agreement with Wylie by the terms of which the company was to pay to Wylie the sum of $5 therefor; that thereupon the defendant company tendered to Wylie the sum of $35 in full payment for said strip of land and for the excess of dirt used as above stated, and demanded of Wylie the execution of a written conveyance in accordance with the previous agreement; that Wylie refused to accept the sum of money so tendered, and refused to execute the deed of conveyance to the right of way. It is further alleged that, in going upon the land in the manner described, the railway company had constructed permanent and valuable improvements thereon, amounting in value to $10,000. It is also alleged that, by reason of these facts, the appellant is entitled to have the contract with Wylie enforced, and defendant tenders to the plaintiffs the balance of said sum of money due thereon, to wit, the sum of $34; $1 having theretofore been paid to Wylie. (4) It is specifically denied that the injuries resulting from the overflow claimed in the petition were caused by any negligence on the part of the railway company in the construction of its roadbed, or its failure to leave proper outlets.

After a trial before the court, a judgment was rendered in favor of the appellees for the sum of $29 as the unpaid balance of the purchase money for the right of way, the further sum of $50 as damages which accrued to the plaintiffs' land by reason of the removal of dirt from the land not included within the right of way granted, and the sum of $200 as damages to the land adjacent to the right of way. It was further ordered by the court that the railway company, upon the payment to the clerk of the court below of the sum of $29, with 6 per cent. interest thereon from date, recover of the plaintiffs, J. E. and Joe Smith, the title and right of possession of the strip of land designated as 100 feet across the tract in controversy. A mandatory order was entered directing the railway company "to restore and maintain all streams and water courses along, upon, across, or over which the defendant has constructed a railroad and roadbed on plaintiffs' land and premises, and that portion thereof recovered herein, to their former state, and to such

state as will not unnecessarily impair the usefulness of said land, and to construct and maintain all necessary ditches, culverts, and sluices as the natural lay of said land requires for the necessary drainage thereof." Each party was required to pay his own costs.

The court filed the following as his findings of fact and conclusions of law:

"I find that Wylie, who was the vendee of Smith, made a contract with the railroad company to convey to them a right of way through the land involved in this suit, a strip of land 100 feet wide and containing four and a fraction acres of land, in consideration of $30, $1 of which was paid in cash, and $29 was agreed to be paid, and tendered to the plaintiff, which he refused to accept.

"I find that the railway company, in the construction of their road, went outside of their 100-foot right of way and took the surface dirt, a foot or a foot and a half thick, from an acre of the plaintiffs' land, for which they have paid no compensation, and for which they should pay the sum of $50.

"I find that, on account of the negligent construction of the railway on and across the plaintiffs' land, by overflows and deposits of sand and débris other than would have been deposited by the natural flow of the water, plaintiffs' land has been injured in the sum of $200.

"I find that the manner in which the road is at present constructed has diverted the waters from their natural flow, and caused the land to overflow more than it otherwise would have done.

"I find that the plaintiffs' claim for the $50 damage to the land would have been barred by the statute of two years' limitation, but, it being a part of the company's claim of right of way, it is manifestly unjust that the statute of limitation should be applied to this while the company is allowed to carry out its contract with reference to the right of way, and therefore, in consideration of equity, the plea of the statute of limitation is disallowed.

"Judgment is therefore given against the railway company for $29, the balance due on the right of way, with 6 per cent. interest on the same, for $200 damages for injury to the land to date, and for $50 damages to the acre of land the surface of which was removed and placed in the right of way.

"It is further ordered that a mandatory injunction issue requiring the defendant to construct its roadbed and openings and sluiceways in such manner that the waters will flow in their natural way as they flowed before.

"It is further ordered that upon payment of the $29, and payment of the $50 allowed for damages to the acre of land, that the title to the right of way strip 100 feet wide across the land in controversy be divested out of the plaintiffs, and be vested in the defendant company."

It is insisted that the cause of action pleaded was barred by the statute of limitation of two years, and that this was disclosed both by the petition and the evidence. The facts do not support the contention, and the assignments are overruled.

In the third assignment of error it is contended that the evidence did not authorize the judgment for $200 as damages for injury to the land, resulting from obstructing the drainage and diverting the natural flow of the water. It is unnecessary to here reproduce the evidence upon that issue. A careful examination of the record has convinced us that there was sufficient evidence to support the findings of the court.

[1] It is also insisted that the judgment awarding the mandatory writ of injunction should not have been rendered. The cause of action and the judgment rendered are based upon facts showing that, in the construction of its roadbed, the appellant had interfered with and diverted the natural flow of the surface water across this land, and had failed to provide and maintain sufficient outlets, and that, as a result, the land was flooded, washed, and damaged by each recurring overflow. The order of the court is substantially in accordance with the requirements of articles 6485 and 6495 of the Revised Civil Statutes of 1911.

[2-4] The judgment was fundamentally wrong in awarding a recovery of $50 as damages for taking dirt from land outside of the right of way during the construction of the railway in 1909. Whatever damages resulted from that trespass belonged originally to Wylie, who was at that time the owner of the land, but who is not made a party to this suit. It is true that there is evidence tending to show that the appellees purchased Wylie's claims against the railway company at the time they acquired title to the land, but there is no pleading by the appellees alleging any such damages. But, if by any possible construction it could be said there was, there are no allegations that the claim for such damages had been acquired by the appellees. It is true the appellant concedes in its answer that it was due Wylie $5 as damages for removing this dirt, and tendered that amount along with the balance, which it admits was due as a part of the purchase price of the right of way. But such pleadings can form no basis for the rendition of a judgment for $50. Proof of facts not alleged, although admitted without objection, can furnish no basis for a judgment. Cooper v. Laughlin, 75 Tex. 526, 13 S. W. 37; Hall v. Jackson, 3 Tex. 305. The taking of dirt outside of the right of way was an independent trespass wholly unconnected with the contract by which the appellant acquired the right of way. Assuming that appellant was seeking in this action to enforce a specific performance of Wylie's agreement to convey the title upon a tender of the balance of the purchase price, appellant was not bound to

make reparation for that independent trespass before it was entitled to that particular relief. A tender of the balance due or an offer to pay after a previous tender would be a full compliance of all that was required as a condition precedent to a judgment awarding it the legal title to the land in controversy. However, inasmuch as the appellant admits that the sum of $5 was due for the dirt taken outside of the right of way, and offers to pay that sum, the judgment will be reformed so as to award the appellees for that element of damages only the amount tendered, to wit, $5. In all other respects, the judgment will remain undisturbed.

There was no error in the manner of apportioning the costs between the parties as was done in this instance. In its answer the appellant sought affirmative relief, which was awarded in the judgment rendered. The case is not one that comes within the provisions of the statute requiring the court to enter upon the record his reasons for adjudging the costs otherwise than against the losing party.

All costs of this appeal are adjudged against the appellees.