BRAY et al. v. BOYLES.  (No. 8056.)*

(Court of Civil Appeals of Texas.  Galveston.
June 28, 1921.  Dissenting Opinion June 29,
1921.  Appellants' Rehearing Granted March
23, 1922.  Appellee's Motion for Rehearing
Denied April 13, 1922.)

Vendor and purchaser ⬤⟲101—To rescind, notice to defaulting vendee held required.

Where vendor sued vendee on note for
balance of the purchase price, but while that
suit was undisposed of, and without notice to
vendee, conveyed the land to a third party by
deed reciting the former sale to the original
vendee and her default, *held*, that judgment for
the third party in his suit in trespass to try
title against the original vendee would be
reversed, and the cause remanded to have the
sum due from the original vendee ascertained,
so that, on her payment thereof, the title to
the land might be adjudged to her.

Pleasants, C. J., dissenting.

Appeal from District Court, Harris County;  W. E. Monteith, Judge.

Suit by Edward S. Boyles against John W.
Bray and others, in trespass to try title.
Directed verdict and judgment for plaintiff,
and defendants appeal.  Reversed and remanded, on rehearing, for determination and
adjudication of certain matters.

Meek & Kahn, of Houston, for appellants.
Moody, Boyles, Walker & Scott, of Houston, for appellee.

LANE, J.  This suit was brought by appellee, Edward S. Boyles, against John W.
Bray and Irma Root Bray, in the district
court of Harris county, Tex., on the 23d day
of February, 1917.  The suit is an ordinary
suit of trespass to try title to five-eightieths
undivided interest of a certain subdivision
of 80 acres of land situated in Harris county.

On the 19th day of September, 1919, Irma
Root Bray, hereinafter called Mrs. Bray, answering the plaintiff's petition alleged that
on the 12th day of December, 1912, one A.
Stelzig by his warranty deed conveyed to
her the land sued for by the plaintiff for a
consideration of $750;  that of this consideration she paid cash in the sum of $250, and
for the remainder she did, on said date, execute and deliver to A. Stelzig her note for
$500 bearing 8 per cent. interest per annum
and payable, one year after its date;  that
said property was purchased with her separate funds, and became her separate property;  that when said note became due and
payable, she was told by her codefendant,
J. W. Bray, that he was the owner of the
land;  that he, the said J. W. Bray, was in
possession thereof, holding same against her;
that she notified Stelzig of the claim and
possession of J. W. Bray, and that she could

not get possession of same;  that but for the
claim and possession of J. W. Bray to and
of said land she would have paid the $500
note executed and delivered by her to Stelzig;  that after said note became due, to wit,
in August, 1916, Stelzig filed suit thereon
against her and others and prayed for judgment for principal, interest, and attorney's
fees as provided thereby, but he has never
taken any further steps in said cause, and
has, ever since it was filed, permitted it to
remain pending in court;  that the defendant has been ready, willing and able at any
time that Stelzig should establish his right
in said land superior to the rights of the
said J. W. Bray to pay off said note, interest and attorney's fees, but that, instead of
so clearing the title to said land, the said
Stelzig did, on the 14th day of February,
1917, by his deed of that date, convey said
land to the plaintiff herein, Edward S. Boyles,
for a recited consideration of $798;  that
at the time of such conveyance, Boyles knew
of the pendency and purpose of the suit filed
by Stelzig against her, and she charges that
such conveyance was not a bona fide transaction, but was an attempt on the part of Stelzig to place the title of the land in the plaintiff, Boyles, to enable him to prosecute this
suit for the benefit of himself, Stelzig, and
for him to get back the title to said land
without returning to defendant the $250 paid
by her to him, but that, if she is mistaken in
this, then she says that, as Boyles knew of
the pendency of the suit of Stelzig against
her on said $500 note, and knew of all the
other facts above stated relative to her purchase of said land, and knew that her only
reason for not paying to Stelzig said purchase-money note was that her codefendant,
J. W. Bray, was in actual possession of said
land, claiming title thereto, superior to that
of Stelzig and herself.  She pleaded further
as follows:

"This defendant shows that she has always
been ready, willing, and able, and anxious to
pay off and discharge said note, and that her
only purpose for not having done so was by
reason of the fact that her codefendant, John
W. Bray, was in actual possession of said land,
and claiming the same hostile to herself and
to her vendor, A. Stelzig;  that she is now
ready, willing, and able to pay off and discharge
said note and such interest and attorney's fees
as the court might find under all of the circumstances she should pay, if any, and she
now offers to deposit in this court such amount
of money as the court thinks she should deposit
for the purpose of paying off and discharging
any indebtedness on said land if upon a hearing
of this cause the court should find that she has
any title under her deed from the said A.
Stelzig, or if she has a superior title to her codefendant, John W. Bray, and this defendant
shows that, the said Edward S. Boyles having
notice of her rights in said land when he accepted the deed from the said A. Stelzig, of

date February 14, 1917, it would be inequitable and unjust for. him to be permitted to assert a superior right in said land to this defendant, but that in law and equity by the acceptance of said deed the said Boyles should be held to have acquired only such right and interest in reference to said land as the said A. Stelzig held and was entitled to hold as against this defendant, Irma Root Bray, and, to the end that this defendant may be protected, and that her $250 which she has heretofore paid on said land may not be lost to her, she now here offers to do and perform any act or order that this court may see fit to enter by making any deposit that this court may require, or agreeing to perform any decree or judgment that the court may see fit to enter, to the end that the court may look into the equity involved in this suit, and that, upon a final hearing hereof, if under all the facts and circumstances of the case it be found that this defendant should have paid the note when due, or when demanded of her, that she will now pay, after such findings by this court, any sum of money that the court may find she ought to pay by reason of the execution of said note, and, having submitted herself to the equitable powers and jurisdiction of this court, this defendant now here prays that, upon a final hearing, the plaintiff be not permitted to have judgment for the title of the land sued for, but that, if it be ascertained that she has any rights in said land by virtue of said deed, then this defendant prays that the court ascertain what such rights are, and make any decree that is meet and proper to the end that this defendant may pay off and discharge any indebtedness that she has created and bound herself to pay, to the end that the title to said land, such title as the said A. Stelzig had at the time he conveyed to this defendant, should be vested in her."

Defendant John W. Bray answered by general denial and by specially pleading the 10-year statute of limitation in bar of the right of the plaintiff, Boyles, to recover the land sued for.

On the 22d day of September, 1919, the plaintiff, Edward S. Boyles, filed his first supplemental petition in reply to the answer of J. W. Bray, and therein denied generally the allegations of said answer. He alleged further that on the 8th day of February, 1913, a suit was brought by one R. C. Peters, an owner of an undivided interest in the 80 acres, of which the land purchased by Irma Root Bray from Stelzig was a part, against Mrs. Bray and her husband, John W. Bray, and others, and that on the 13th day of September, 1915, a final judgment was duly rendered in said suit, whereby it was decreed, among other things, that Irma Root Bray was the owner of a certain 3.18 acres of said 80 acres, which said 3.18 acres were in said decree set aside to and adjudged to be the separate property of the said Mrs. Bray, same being described by metes and bounds as follows: (Here said 3.18 acres are described by metes and bounds)—that by said judgment it was decreed that John W. Bray owned no interest in said 80 acres

whatever; that the 3.18 acres set aside to Mrs. Bray is the tract in controversy in this suit; that by said judgment in the R. C. Peters case it was adjudged and decreed that all title and interest claimed by J. W. Bray to the land in controversy be divested out of him and vested in Irma Root Bray.

He then alleged that John W. Bray is, and has been ever since the rendition of said judgment, concluded from asserting any title to said land.

On the 9th day of July, 1920, Edward S. Boyles filed his second supplemental petition in reply to the answer of Mrs. Irma Root Bray, and therein denied generally the allegations of said answer; specially denied that Mrs. Bray ever notified Stelzig that her husband, John W. Bray, was claiming to be the owner of said land, or that said Bray was in possession thereof, holding adversely to Stelzig and herself; specially alleged, upon the execution of the deed by Stelzig to Mrs. Bray on the 12th day of December, 1912, she went into possession of a portion of the 80 acres of land of which the land sold to her was a part; that Stelzig had often requested of Mrs. Bray the payment of the $500 note, which request was by her refused. He specially denied that Mrs. Bray has at any time since said $500 note matured been ready, willing, and able to pay same, and that the only reason for not so paying same was because her codefendant, J. W. Bray, was in possession of the land sold to her by Stelzig, claiming the same adversely to her. He then alleges the bringing of the suit by R. C. Peters mentioned in his first supplemental petition, and the judgment rendered therein, as in said first supplemental petition described, and then alleged that, notwithstanding said judgment of partition, and notwithstanding that by said judgment all right, title, and interest claimed by J. W. Bray in the land set aside to Mrs. Bray was divested out of him and vested in her, thus effectively establishing her title thereto as against John W. Bray, still she did not at the time such judgment was rendered, viz. December 13, 1915, nor at any time since then, offer to pay said note.

On these pleas the cause went to trial before a jury on the 9th day of July, 1920, and after the trial had proceeded for three days J. W. Bray filed the following plea:

"Now comes the defendant John W. Bray and respectfully shows to the court that, since the trial of this case has begun, and the evidence was being introduced, plaintiff introduced in evidence a judgment of partition together with report .of commissioners in the cause of R. C. Peters v. J. H. Halpen et al., showing that there was a partition had and that the tract of land in controversy was awarded to the defendant, Irma Root Bray, and such title as this defendant had was divested out of him, and this defendant therefore says that said judgment is binding upon him, as he is

informed by his counsel, and he therefore withdraws his plea of limitation in this case against plaintiff's cause of action and the plea of not guilty."

After the filing of such plea by John W. Bray, Mrs. Bray asked permission of the court to file the following plea:

"Now comes the defendant Irma Root Bray, and files this trial amendment herein, leave of the court having been first had and obtained, and says that she is informed that the defendant J. W. Bray has withdrawn his plea of limitation in this cause, and also his plea of not guilty, and that he has been permitted to do so by this honorable court, and she therefore here now prays the court to ascertain the amount due plaintiff in order that she may pay same, which she is ready and willing to do, or perform any other act that the court may decree that she should perform and do, to the end that she may pay off and discharge the obligation that she incurred in the purchase of the land in question, and to the end that her $250 may be saved to her, as well as valuable improvements, which have been placed upon the land since her purchase, for all of which she will ever pray."

The request to file such plea by Mrs. Bray was by the court refused, and the trial proceeded.

It was shown by the undisputed evidence that, prior to the sale of Stelzig to Mrs. Bray of the land in controversy, Stelzig, R. C. Peters, J. H. Halpen, and others were the joint owners of the 80 acres of land of which the land in controversy is a part, each owning an undivided interest thereof, and that at the time Stelzig sold to Mrs. Bray he was the owner of the land so sold, and that he is the common source of title as between the parties interested in this appeal; that on the 13th day of December, 1912, Stelzig by his deed of that date conveyed to Mrs. Bray an undivided five-eighths of the 80-acre tract above mentioned for a consideration of $750; of this sum $250 was paid in cash and the remainder was evidenced by a $500 note executed by Mrs. Bray to Stelzig, payable on the 13th day of December, 1913; the vendor's lien being expressly retained in the deed to secure payment of said note. Prior to this sale of Stelzig to Mrs. Bray, John W. Bray, the husband of the purchaser, Mrs. Bray, to wit, June, 1905, took possession of about 400 acres of land, which included the 80 acres above mentioned, his possession being such as would ripen into title under the 10-year statute of limitation if held for 10 years. While J. W. Bray was in possession of said land he constructed certain improvements thereon, and among other things was conducting a dairy business thereon, both he and his wife, Irma Root Bray, at times temporarily resided thereon, but the permanant home of Mrs. Bray was in the city of Houston.

On the 8th day of February, 1913, less then 2 months after the purchase of the land in controversy by Mrs. Bray from Stelzig, R. C. Peters brought suit against J. H. Halpen and wife, John W. Bray, Irma Root Bray, the wife of J. W. Bray, and others. The plaintiff alleged that the defendants, except John W. Bray, were the owners of the 80-acre tract of land of which that in controversy is a part, and prayed for partition thereof. Mrs. Irma Root Bray was duly served with citation by publication in the last-mentioned suit, an affidavit having been made by counsel for R. C. Peters that she was secreting herself so that personal service could not be had upon her. After such service the court appointed counsel to represent Mrs. Bray, who filed answer denying generally the allegations of the plaintiff's petition. All other defendants were duly served with citation.

In the judgment entered in said suit on the 15th day of June, 1915, it is recited that all parties appeared by their respective attorneys and answered ready for trial, etc., and in the final decree entered in said cause on September 13, 1915, the tract of 3.18 acres in controversy was described by metes and bounds and set aside to Irma Root Bray, and was expressly vested in her, and divested out of all other defendants, including John W. Bray. On the 29th day of September, 1916, execution was issued for the collection of certain costs adjudged against Mrs. Bray in the Peters suit, and on the 26th day of October, 1916, the writ was levied upon the 3.18 acres of land set aside to Mrs. Bray, and on the 5th day of December, 1916, after due notice of sale, said land was by the sheriff sold to Mrs. Bray, she being the highest bidder therefor.

During the pendency of the partition suit of R. C. Peters, to wit, April 29, 1915, A. Stelzig brought suit against Mrs. Bray to recover upon the $500 note given by her as part of the purchase price of the land in question. This suit has never been tried, but has remained upon the docket undisposed of. No action has been taken with reference to this suit since it was filed. It had not been dismissed up to the time of trial of this cause, though appellee contends that it had been abandoned. After the filing of the suit last mentioned, and after the rendition of the judgment in the partition suit of R. C. Peters, whereby title to the property involved in this suit was vested in Mrs. Bray and divested out of John W. Bray, and after Mrs. Bray had been fully informed of such judgment, and after the sheriff had sold the land in controversy to Mrs. Bray to satisfy costs adjudged against her in the Peters suit, A. Stelzig, the original vendor of Mrs. Bray, did on the 14th day of February, 1917, convey to appellee Edward S. Boyles the land in controversy by his deed of that date,

which contains, among other recitals, the following:

"State of Texas, County of Harris.

"Know all men by these presents: That whereas, I, A. Stelzig, of Harris county, Texas, heretofore on the 12th day of December, 1912, conveyed the hereinafter described property to Irma Root Bray of Harris county, Texas, by deed recorded in volume 294, p. 622, of the Deed Records of Harris county, Texas, and as part of the consideration, the said Irma Root Bray executed her note in my favor for the sum of five hundred ($500.00) dollars dated with even date of said deed, due one year after date, bearing interest at the rate of eight per cent. per annum, which said note was secured by vendor's lien retained in said land above described; and whereas, the said Irma Root Bray, though repeatedly requested has failed and refused and still fails and refuses to pay said note, or any part thereof; and whereas, I, the said A. Stelzig, have rescinded said sale: Now, therefore, I, the said A. Stelzig, for and in consideration of the sum of $798.35 to me in hand paid by Edward S. Boyles, of Harris county, Texas, the receipt of which is hereby acknowledged, have bargained, sold and conveyed, and do by these presents bargain, sell and convey unto the said Edward S. Boyles, his heirs and assigns forever the following described property, to wit: [Here the property described in the deed of Stelzig to Mrs. Bray is described.]"

On the 23d day of February, 1917, appellee Boyles filed the present suit against Mrs. Bray and her husband, John W. Bray, and prayed for judgment for title and possession of the land in controversy.

The undisputed evidence further shows that, although Mrs. Bray was fully informed by the suit of Boyles, filed in February, 1917, that her vendor, A. Stelzig, had undertaken to rescind the sale to her of the land in controversy for the nonpayment of the $500 note executed by her to Stelzig in part payment for such property, she continuously from that date up to the 19th day of September, 1919, failed and refused to pay or tender payment of said note, and, though knowing as early as December, 1916, that judgment had been rendered in the Peters case divesting her husband, John W. Bray, of any claim or title to the land in controversy, and vesting the title thereto in her, and knowing that she had received the deed from the sheriff before mentioned, conveying said property to her, she never in any manner tendered payment of said note until her husband, John W. Bray, filed his disclaimer in this suit on the 19th day of September, 1919; that up to the date last named she was refusing to pay said note under the claim that her husband was asserting title to the property.

It was also shown that a citation was issued in the suit of A. Stelzig against Mrs. Bray to recover upon the $500 note, and that the same was served by publication, and that upon motion of Mrs. Bray such citation and service were quashed.

Mrs. Bray testified that she and John W. Bray were husband and wife, and had lived together as husband and wife before and ever since John W. Bray took possession of the land in controversy; that at some time after the 13th day of December, 1913, the date when the $500 note became due, her husband, John W. Bray, told her that if she paid said note her money so paid would be thrown away, as he was claiming the land which she had purchased; that she knew E. M. Harralson prior to his death; that he brought the suit for Stelzig against her; that the first time she knew that Stelzig had sued her was when Harralson came out to her house, and she paid him $62.50 with which to pay the sheriff the sum she had bid for the land at sheriff's sale; that Harralson represented her in that matter; that at the time she paid Harralson the $62.50 she also paid him an additional sum of $25; that Stelzig has never made any demand upon her for payment of the $500 note; that neither Stelzig nor Boyles ever intimated to her that Stelzig wanted his land back; that the reason she did not pay the balance she owed on the land to Stelzig was that after ·she bought her husband claimed it, and she did not want to pay any more on it, and because the court did not say what was hers; that she discussed this matter with Harralson when she saw him.

Upon the pleading and evidence as substantially stated the court instructed the jury to return a verdict for appellee, Boyles, which was accordingly done, and judgment was thereupon rendered for appellee for the land in controversy. From this judgment Mrs. Irma Root Bray has appealed.

By her first assignment appellant, Mrs. Bray, insists that the court erred in refusing to permit her to testify that, after her vendor, Stelzig, had brought suit on the $500 note given by her to him in part payment for the land in controversy, his attorney, Harralson, called on her, and in substance stated to her that Stelzig was in no special hurry; that she then gave Harralson $25 for Stelzig, and that Harralson then stated that he would carry the suit along just to keep the note from becoming barred; that he would manage the suit so as not to push her; that she did not remember whether that conversation with Harralson was at the time she gave the $62.50 to him to pay her bid to the sheriff for the land, or before that time; that she had given him $62.50 to pay off the judgment in the partition suit, and $25 she gave him for Stelzig, and Harralson, the attorney for Stelzig, bought the land in for her at sheriff's sale, and gave her the deed. She gave the money to Harralson, and after that there was never anything

said to her in reference to the collection of the note.

We do not thing the court erred in rejecting the proffered testimony. Appellant had pleaded that her only reason for not paying the note sued upon was that her husband, John W. Bray, was in possession of the land conveyed to her, and was claiming to own the same. Mrs. Bray did not in any manner allege that she had any such conversation or understanding with E. M. Harralson, who represented Stelzig in the suit against her, as she sought to testify to, and therefore appellee's recovery could not have been defeated by testimony tending to show that an agreement had been made by Harralson to extend the time for the payment of the note sued on or to continue the suit brought by Stelzig to recover upon same. Facts not alleged as an equitable reason for not paying the note, though proven, could not have constituted the basis for a judgment in favor of Mrs. Bray. Mims v. Mitchell, 1 Tex. at page 447; Cooper v. Loughlin, 75 Tex. 527, 13 S. W. 37; Paul v. Perez, 7 Tex. 345; Stone Land & Cattle Co. v. Boon, 73 Tex. 556, 11 S. W. 544; Estes v. Browning, 11 Tex. at page 248, 60 Am. Dec. 238; Hall v. Jackson, 3 Tex. 311.

We here quote from the cases cited, as follows:

Mims v. Mitchell:

"The proof must be according to the allegations of the parties; and if the proof goes to matters not within the allegations, the court cannot judicially act upon them as a ground for its decision; for the pleadings do not put them in contestation. The allegata and probata must reciprocally meet and conform to each other."

Paul v. Perez:

"The principle, that the allegata must be broad enough to admit all the necessary proof, and that every material fact must be alleged, has been often declared by this court; first solemnly adjudicated in Mims v. Mitchell, 1 Tex. 443, and sustained by an unbroken train of decisions from that time down to the present. * * * And if there was proof, without such allegata, it should be disregarded."

In the case of Estes v. Browning it is held that, if a vendee of land seeks to avoid a rescission by his vendor by a sale to a third person, because of the failure of the vendee to pay the purchase money for the land sold, he must not only tender the whole of the purchase money, or a full compliance with the obligations of the contract, but he must present some equitable considerations in excuse for his negligence, or relief will not be granted.

It must be conceded, we think, that if Mrs. Bray, without any excuse good in law or equity, refused to pay the purchase money note held by her vendor, Stelzig, he (Stelzig) would have had the right to rescind the contract of sale of the land to her, and to sell the same to appellee, Boyles, as he did. Mrs Bray, recognizing this fact, sought in her answer to set up such excuse. She set up no such reason for her failure or refusal to pay the note sought to be shown by the rejected testimony, but, to the contrary, she did allege that her only reason for her refusal to pay the note was that her husband was in possession of and claiming the land sold to her by Stelzig. If appellant's reason for not paying the note promptly after maturity was in any respect based upon or controlled by the conversation about which she proposed to testify, then the allegation in her answer, that the sole reason for not paying same was that her husband, John W. Bray, was in possession and claiming the land, was manifestly untrue. For the reasons expressed, we do not think the court erred in rejecting the proffered testimony.

By the second, third, and fourth assignments it is insisted that the court erred in instructing a verdict for appellee, Boyles, for the following reasons:

First, that at the time of filing his suit for the land, and at the time he purchased the land from Stelzig, and at the time of the trial of this cause, the suit of Stelzig upon the $500 note given by appellant in part payment for the land was still pending; that she had no notice or knowledge of the pendency of this suit until Harralson notified her thereof when he purchased the land for her at sheriff's sale on the 26th day of December, 1916, nor did she have any notice of any kind from Stelzig or any one else that a rescission of her contract of purchase was demanded because of the nonpayment of the purchase-money note; and that she was not guilty of any act or conduct showing any repudiation of any kind or character of her contract, and therefore she, as a matter of law and equity, under the facts of the case, was entitled to have the amount she was obligated to pay under her contract ascertained, and that upon her tender of payment thereof she was entitled to judgment for the land.

Second, that she paid Stelzig $250 in cash and executed her note for $500 to him for the land; that she had never in any manner repudiated her vendor's title, but that she had notified her vendor of the adverse claim of John W. Bray, and requested him to take some action to protect her in getting possession of the land; that she had no knowledge that the tract of land sued for by appellee had been set aside and adjudged to her in the partition suit of R. C. Peters until E. M. Harralson informed her of that fact in October, 1916, she having been served in said cause by publication only; that she had filed her answer in the suit of Stelzig on the $500 note asking the court to ascertain the amount due, and to ascertain whether or not she had any title to the land, and,

if so, that she be permitted to pay off and discharge her obligations under her contract and have judgment for the land.

· Third, that by reason of the growth of the city of Houston, and the development in and near the premises sued for, said property has enhanced in value from about $100 per acre to about $1,000 per acre, and that, since her purchase improvements have been made on said land and with the community funds of herself and her husband, John W. Bray, of the value of about $1,500 to $2,000, and that since she is now ready, willing and able, and offering to pay any sum the court thought meet and proper, so she might preserve her land, it was unjust and inequitable for the court to deny her the right to now pay off the amount due on the purchase-money note, and a recovery of the land, as the only thing of which she was guilty was the delay in the payment of the purchase-money note.

Fourth, that long after said $500 purchase-money note fell due A. Stelzig, her vendor, filed suit on said note, and he thereby elected to and did affirm the contract of sale, and it would be inequitable and unjust for a court of equity to refuse her the right to redeem her land under all the facts in the case.

We do not think the court erred in instructing a verdict for appellee, Boyles. As we have already stated, the undisputed evidence shows that in 1905, when John W. Bray first took possession of the land in controversy, he and appellant Mrs. Bray were husband and wife, and that they have ever since lived together as such. The possession of John W. Bray was therefore the possession of both himself and his wife, Irma Root Bray, and such possession was not adverse to that of Mrs. Bray, nor was it exclusive in John W. Bray. In these circumstances John W. Bray could not have acquired title to the land by limitation as against his wife, Irma Root Bray, even had he held such possession for 10 years prior to her purchase from Stelzig in December, 1912. The undisputed facts, however, show that in December, 1912, the time when Stelzig sold to Mrs. Bray, the community possession of John W. Bray and wife had been for a term of about 7 years only. Thus it will be seen that at the time of Mrs. Bray's purchase from Stelzig she was occupying the land jointly with her husband, John W. Bray. On page 56 of the statement of facts it is shown that Mrs. Bray testified "that Mr. Bray lived out there on that property. I lived out there with him." It is manifest, then, from the facts stated, that Mrs. Bray's contention that her reason for refusing to pay the purchase money as she contracted to do was because of the adverse claim and possession of her husband, John W. Bray, was untenable.

· If, however, we are in error in the conclu-

sion above expressed, there is still another reason why the reason pleaded by Mrs. Bray for refusing to pay the purchase money is not tenable. The undisputed evidence shows that in the partition suit of R. C. Peters, in which suit Mrs. Bray was a party, the land in controversy was adjudged to be her property, and the title to same was by the decree in that suit vested in her and divested out of her husband, John W. Bray. This decree was rendered in 1916, and for more than three years thereafter, and for more than two years after Stelzig sold the land to appellee Boyles, and for about two years after er Boyles brought the present suit for the land, Mrs. Bray was still refusing to pay said purchase-money note under the claim that her husband claimed the land, and not until John W. Bray filed his disclaimer in September, 1919, and it became apparent that he could not hold the land under his plea of limitation, for the community estate of himself and his wife, appellant herein, did she offer to do equity by a promise to pay the balance of the purchase money.

We would not be justified in extending this already lengthy opinion by a further discussion of this issue.· The undisputed evidence shows, we think, that Mrs. Bray's hands are not clean enough in the transactions relating to the matter in controversy for her at this late date to appeal to equity, and the courts, we think, should turn a deaf ear to her equitable appeals. Under the undisputed facts in the case, the appeal of appellant for equitable relief is so weak and void of merit that it should not avail her in any court of equity; indeed, the rules of equity, the demands of justice, fair dealing, and good morals, demand at our hands a refusal of appellant's appeal and an affirmance of the judgment of the trial court, and only in the event we should be coerced by some well-established rule of law would we reverse the judgment; and we know of no such rule.

There is no merit in the contention of appellant that the equitable relief asked by her should be granted under the circumstances because of the enhancement of the value of the land by reason of the growth of the city of Houston, or by reason of the improvements placed thereon. In the first place, this supposed equity was not pleaded by her, and in the second place, since she was wrongfully refusing for 6 years to pay the purchase money for the land, she is not equitably entitled to recover because of the enhanced value by reason of the growth of the city of Houston, or because she and her husband had made valuable improvements on the land.

Nor do we think there is any merit in the contention that appellee, Boyles, is estopped to recover because of the suit of Stelzig, the vendor of appellant, upon the $5,000 note,

which had not been dismissed at the time of the trial of this case.

We think the conclusions reached by us as above expressed are amply supported by the following authorities: Crain v. Ins. Co., 56 Tex. Civ. App. 406, 120 S. W. 1098; Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290; Hughes v. Burton Lumber Corp. (Tex. Civ. App.) 188 S. W. 1022; Weil v. Martinez, 57 Tex. Civ. App. 440, 124 S. W. at page 126; Stone Land & Cattle Co. v. Boon, 73 Tex. 556, 11 S. W. 544. In the case last cited it is said:

"That a deed for land expressly retaining a lien for unpaid purchase money does not divest the vendor of his title in the land is too well settled in this state to require discussion. Until he has elected he can either sue for the land or for the purchase money with foreclosure. What may amount to an election to pursue the remedy to foreclose his lien, after he could not recover the land, may not be easy to prescribe a definite rule for.

"The case of Ufford v. Wells, 52 Texas, 617, in part at least furnishes the solution of the question now presented, and we are not at liberty to depart from it. In that case as in this, the vendor conveyed the land by deed on its face reserving a lien. The original vendee conveyed the land to a third party without having paid the purchase money, and afterwards the original vendor sued the original vendee, without making the subsequent vendee a party, to recover this debt and foreclose his lien, and at the sale by the sheriff under the judgment foreclosing his lien the original vendor purchased the land, and then brought an action of trespass to try title against the subsequent vendee. He recovered the land in the district court, and this court affirmed the judgment, Justice Bonner saying:

"'If the purchaser's title was superior before the judgment of foreclosure and the sale thereunder to himself this would not make it less so.'

"If prosecuting a suit for the purchase money to a foreclosure and sale of the property does not amount to an election to afterwards treat the transaction as a conveyance of the title, subject to the enforcement of the lien, at least as to all parties with rights and obligations derived directly through it, we do not think it can be consistently held that when the vendor, who has the right to sue for the recovery of the land or to foreclose his lien, has done no more than to file his petition praying to foreclose the lien that that alone ought to prevent him from amending his petition and praying for his other remedy, a recovery of the land."

And in Weil v. Martinez, supra, it is said:

"In appellant's amended answer, filed July 15, 1908, appellant offered to pay whatever the court might find to be due appellees for the land in event the court should find that appellees had complied with their part of said agreements by doing the things undertaken to be done by them, and complaint is made of the action of the court in not allowing appellant to do this and keep the land, by the decree. No money was actually tendered in court. This conditional offer came for the first time six years after the suit had been filed, and after the land had very largely increased in value. After absolute denial of appellees' right to demand payment, and resistance of his claim for either money or land, requiring the bringing of this suit, and persisted in through the six years that the suit has been pending, and after the large increase in value of the land, there was no equity in appellant's belated claim thus set up, and the court did not err in refusing to entertain it. Appellant had made his election and must stand by it."

What we have already said under assignments 1 to 4 inclusive, disposes of the contention made by assignments 5 and 6, and for reasons already stated said assignments are overruled.

Having reached the conclusion that the trial court committed no reversible error in the trial of this cause, the judgment there rendered is in all things affirmed

Affirmed.

---

PLEASANTS, C. J. (dissenting). I cannot agree with my associates in the disposition made of this appeal.

The answer of Mrs. Bray offering to do equity and to pay whatever amount the court should find due on the note given by her in part payment of the purchase money for the land was not excepted to by the plaintiff, and as against a general demurrer should be regarded as a sufficient tender, and offer to do equity to entitle her to redeem the land unless the evidence shows that she had forfeited her right of redemption by repudiating or abandoning her contract of purchase, and that to now permit her to exercise that right would be unjust and inequitable to plaintiff.

I do not think that the undisputed evidence shows that she had repudiated or abandoned her contract of purchase, or that any injustice will be done plaintiff by now permitting her to redeem, and the action of the trial court in instructing a verdict for the plaintiff should not be sustained.

I am also of opinion that the testimony of Mrs. Bray as to the statements made to her by the attorney of the plaintiff, in the suit brought on the note, as to the purpose of the suit and the intention of the plaintiff in regard to its conduct was admissible on the issue of the defendant's repudiation or abandonment of her contract.

I think it clear that Stelzig attempted rescission of the contract by the sale of the land without notice to Mrs. Bray, and with his suit for foreclosure, in which she had filed no answer, pending, was ineffectual to defeat her right to redeem, and I do not think the subsequent conduct of Mrs. Bray was such as to defeat the right against plaintiff in this suit.

I may, before the final disposition of this

appeal, give a fuller statement of my grounds of dissent.

## On Appellants' Motion for Rehearing.

LANE, J. At a former term of this court the judgment of the trial court awarding to appellee a recovery of the land sued for was by a majority of this court affirmed, Chief Justice PLEASANTS dissenting. Appellants have filed their motion for rehearing, insisting that the judgment of affirmance was error.

Upon consideration of said motion we have, in view of the decision rendered by the Supreme Court in the case of Walls v. Cruse (Tex. Com. App.) 235 S. W. 199, reached the conclusion that we erred in affirming the judgment, and now conclude that the judgment should be reversed and the cause remanded, to the end that the trial court may determine what amount is equitably due appellee in accordance with the tender of appellant, Irma Root Bray, to pay any sum of money to appellee that the court may find that she ought to pay by reason of the execution of the note executed by her to A. Stelzig, and to the end that upon the payment of such sum into court the title to the land in controversy may be adjudged to appellant, Irma Root Bray.

Having reached the conclusion as above shown, we did, at a former day of this court, grant appellants' motion for rehearing, and set aside the judgment heretofore rendered by this court, and we now, upon reconsideration of the appeal, for the reasons pointed out, reverse the judgment of the trial court and remand the cause for the determination and adjudication of the matters as above indicated.

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes